THIRD DIVISION
May 7, 2008

No. 1-07-0616

| | | |
|---|---|---|
| ROSEMARY MULLIGAN, | ) | Appeal from |
| Individually and on Behalf of | ) | the Circuit Court |
| All Others Similarly Situated, | ) | of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 04 CH 03620 |
| v. | ) | |
| | ) | |
| QVC, INC., a Corporation, | ) | Honorable |
| | ) | Dorothy K. Kinnaird, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Rosemary Mulligan brought this putative consumer class action lawsuit against defendant QVC, Inc., for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)) and unjust enrichment. Mulligan alleged that QVC's listed "retail value" overstated the prevailing market price for certain products it sold and falsely created the impression that consumers were receiving a bargain by purchasing at lower QVC prices. The circuit court denied Mulligan's motions for class certification, finding that individual issues of law and fact predominated. Thereafter, the circuit court granted QVC's motion for summary judgment on Mulligan's individual claims and denied her cross-motion for summary judgment, ruling that Mulligan failed to create a genuine issue of material fact to support the elements of her consumer fraud

and unjust enrichment claims.

On appeal, Mulligan contends that the circuit court erred in granting summary judgment because she has presented sufficient facts to support each element of her cause of action. Additionally, she maintains that the circuit court abused its discretion in denying class certification because the common issue of QVC's deceptive comparative pricing practice predominates over any individual issues.

BACKGROUND

QVC sells various consumer products through its nationwide television programming and its Internet web site. In offering its products for sale, it generally uses a comparative pricing system. For 70% of its products, QVC advertises a "retail value" for the product, then offers the product to the consumer at a lower, discounted QVC price or at an even lower "special price." QVC's viewer education spot on television provides a definition for "retail value" as follows:

> "When you see 'retail value' for an item, that figure represents
> either an actual comparison-shopped price or the price QVC
> believes that the same or a comparable product would be offered
> by department stores or other retailers using a customary markup
> for that product category. The 'retail value' does not necessarily
> represent the prevailing retail price in every community, or the
> price at which the item was previously sold by QVC."

Mulligan purchased over 200 products and several items of jewelry from QVC over the years. Specifically relevant to this cause of action, on April 1, 2003, she purchased an "Ultrafine

Cigar Band Ring" for $37.38. QVC listed a retail value for this product of $60. On May 17, 2003, she purchased a "Jade and Gemstone Bypass Ring" for $38.12. QVC listed a retail value for this product of $55. On July 19, 2003, Mulligan purchased a "Geometric Flexible Link Bracelet" for $28.98. QVC listed a retail value for this product of $55. On January 2, 2004, she purchased a "Pave Enamel Flex Bracelet" for $26.75. QVC listed a retail value for this product of $39.

Mulligan's jewelry purchasing decisions were based upon many factors, including whether the product was appealing, affordable, an impulse purchase, on sale, and whether she was searching for a particular product. She also considered the host's description of the product. Mulligan watched QVC programming for various reasons, including better prices, the variety of products, and "of course, it was convenient shopping. Everything is right there in front of you." There were particular features of the show that she liked. "When you watched it, they made you feel like, you know, you were part of this family."

Mulligan had seen QVC's televison spot which explains the definition of "retail value." At the time she purchased products with a listed retail value, "[s]ometimes [she] thought [the retail value] seemed high ***. It just seemed like that was awfully high--you know, [she'd] see it and think it was high for some item, higher than what [she] would have thought it would have been." However, that knowledge did not prevent her from buying the product because she thought that the price she actually paid was a fair price.

She would have purchased the products from QVC even if QVC listed no retail value, but the retail value impacted her purchasing decisions because she believed she was getting a

bargain at the QVC prices. If she could have bought the products in a store for the same amount or less than what she paid for it at QVC, she would have gone to the store instead of paying the extra shipping and handling fee to buy it from QVC.

Mulligan does not dispute that she continued to purchase products from QVC even after filing this lawsuit, and acknowledges that a consumer could not legitimately claim to be actually deceived by QVC's listed retail values if the consumer continued to purchase the products after suing QVC.

On February 27, 2004, Mulligan filed her class action lawsuit against QVC, seeking damages under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2004)) and under a theory of unjust enrichment. Thereafter, she filed a motion for certification of a nationwide class. On June 6, 2005, the trial court denied the motion, finding that individual issues of proximate cause and actual damage predominated. This court denied Mulligan's petition for leave to appeal that ruling. Thereafter, Mulligan filed a second motion for class certification limited to a class of Illinois consumers who purchased specific products sold by QVC. The trial court also denied that motion, again finding that individual issues predominated.

Subsequently, QVC filed its motion for summary judgment on Mulligan's individual claims, arguing that Mulligan had adduced no evidence of prices at which other retailers had sold any of the products she had bought from QVC and, therefore, could not prove a deceptive act or practice or resulting damage. Additionally, QVC argued that, because Mulligan purchased products from QVC for a variety of reasons, she could not establish that QVC's alleged deception proximately caused her actual damage.

4

1-07-0616

In response, Mulligan presented an expert jewelry appraiser. Heidi Harders testified in her deposition that she determined comparable prices for the products Mulligan purchased from QVC by using a cost and a market approach to valuation. Harders estimated the retail value of the cigar band ring at $25 to $35. With respect to the sterling jade and gemstone ribbed bypass ring, she estimated its retail value at between $30 and $40. With respect to the flexible link bracelet, Harders estimated its retail value at between the $30 to $40 range. With respect to the enamel bracelet, she estimated its retail value at between $20 to $30.

In doing her appraisal, Harders did not factor in any applicable sales tax, shipping and handling, or other additional costs. She agreed that the margin of error on her appraisal could be $5 higher than the appraised prices. Harders also acknowledged that there were other factors to consider in determining the retail value, including the retailers' overhead, the quality of the product, and the demand for the product at a given time.

In her response, Mulligan also presented the deposition testimony of QVC's retail coordinator to establish several inherent inaccuracies in the process by which QVC obtains its retail values, including: (1) the limited market in which QVC finds its comparable goods despite it being a national advertiser; (2) the limited "category shops" conducted each year; (3) the way QVC treats comparable goods that are on sale; and (4) the small percentage of goods for which they find comparable products.

As a result, Mulligan argued that she did not receive the benefit of the bargain QVC claimed she had received and, therefore, calculated her damages as the difference between the actual retail value as expressed by Harders and the value those items would have had if the QVC

5

listed retail value was in fact correct. The following chart summarizes those values.

| Product | QVC Retail Values | Purchase Price | Harders' Retail Values |
|---|---|---|---|
| Cigar Band Ring | $60 | $37.38 | $25-35 |
| Bypass Ring | $55 | $38.12 | $30-40 |
| Flexible Link Bracelet | $55 | $28.98 | $30-40 |
| Pave Enamel Bracelet | $39 | $26.75 | $20-30 |

In reply, QVC presented a report by jewelry appraiser Lorraine Oakes. Oakes conducted an independent appraisal of the retail value of the four products Mulligan purchased. Her report was critical of Harders' methodology and included evidence of comparable priced items in the Chicago area that were within or higher than QVC's listed retail values.

On January 31, 2007, after briefing and oral argument, the circuit court granted QVC's motion for summary judgment and denied Mulligan's cross-motion. The court found that Mulligan failed to create a genuine issue of fact to support evidence of a deceptive practice, proximate cause, or actual damage. Mulligan filed this timely appeal.

ANALYSIS

Mulligan contends that the circuit court erred in granting summary judgment on her Consumer Fraud Act and unjust enrichment claims because the court improperly resolved disputed issues of fact. Summary judgment is appropriate where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). In ruling upon a motion for summary judgment, a court has a duty to construe the evidence strictly against the movant and liberally in favor of the nonmovant.

6

Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376, 837 N.E.2d 48, 55 (2005). Nevertheless, "[i]f the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." Bagent v. Blessing Care Corp., 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007). We review the grant of summary judgment *de novo.* Shannon v. Boise Cascade Corp., 208 Ill. 2d 517, 524, 805 N.E.2d 213, 217 (2004).

Section 2 of the Consumer Fraud Act provides that "deceptive acts or practices *** or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful." 815 ILCS 505/2 (West 2004). Section 10a(a) of the Act authorizes private causes of action for practices proscribed by section 2. Section 10a(a) states, in pertinent part: "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 2004).

To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish the following: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 180, 835 N.E.2d 801, 853 (2005). The Act is to be construed liberally to effect its purposes. 815 ILCS 505/11a (West 2004).

Consistent with Mulligan's theory, state and federal regulations recognize the possibility

1-07-0616

that retail price comparisons can be deceptive and misleading. See, *e.g.*, 14 Ill. Adm. Code §470 adopted at 13 Ill. Reg. 11441 (eff. June 29, 1989) (retail pricing);16 C.F.R. §233.2 (2008) (FTC guides against deceptive pricing). Illinois has adopted regulations specifically relevant to Mulligan's cause of action. The Illinois Attorney General has recognized:

> "Price comparison advertising is a form of advertising used in the sale of products whereby current prices are compared with * ** the prices of other sellers, or other stated values, to demonstrate price reduction or cost savings. It is the intent of this Part to ensure that the comparative price used in any price comparison advertisement provides accurate information and meaningful guidance to the consumer. The use of misleading price comparisons is injurious to both the consuming public and competitors and is an unfair or deceptive act and an unfair method of competition under Section 2 of the Consumer Fraud and Deceptive Business Practices Act." 14 Ill. Adm. Code §470.110, adopted at 13 Ill. Reg. 11441 (eff. June 29, 1989).

More specifically, the following regulations identify the circumstances under which a seller's comparison prices amount to a deceptive practice under the Act:

> "It is an unfair or deceptive act for a seller to compare his price with the price at which he or any other seller is offering a comparable product (for example: '69, compare at $99,'

8

'[c]omparable value $99') unless:

(a) The comparable product is currently being offered at the stated higher comparative price *** by a reasonable number of other sellers in the sellers' trade area *** ; and

(b) There are no substantial differences in quality, grade, materials, or craftsmanship between the comparable product and the product offered by the seller."  14 Ill. Adm. Code §470.270, adopted at 13 Ill. Reg. 11441 (eff. June 29, 1989).

"Trade area" is defined in the regulations as "the geographic area where the seller's outlets are located and where the seller's advertisements are disseminated."  14 Ill. Adm. Code §470.120, adopted at 13 Ill. Reg. 11441 (eff. June 29, 1989).  These regulations have the force of law in Illinois.  815 ILCS 505/4 (West 2004); B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir. 1999); United Consumers Club, Inc. v. Attorney General, 119 Ill. App. 3d 701, 705, 456 N.E.2d 856, 859 (1983).

Mulligan maintains that she has presented a genuine issue of fact to support a deceptive comparative pricing practice based upon Harders' testimony that the retail values for the four specific items Mulligan purchased were significantly lower than QVC's stated retail values. QVC's expert attacks the basis of Harders' opinions and the methodology she applies to reach those opinions, arguably creating a factual dispute regarding whether comparable products were being offered at the stated higher comparative price "by a reasonable number of other sellers in the sellers' trade area."

Nonetheless, even if we were to accept Mulligan's expert testimony that the retail values were overstated, we find that Mulligan failed to create a genuine issue of material fact to support the elements of actual damage and proximate cause, and that QVC is entitled to judgment as a matter of law.

Although the Attorney General may prosecute a violation of the Act without showing that any person has in fact been damaged, it is well settled that in order to maintain a private cause of action under the Consumer Fraud Act, a plaintiff must prove that she suffered actual damage as a result of a violation of the Act. Avery, 216 Ill. 2d at 195, 835 N.E.2d at 859. Mulligan focuses her argument on the proper measure of calculating her damages and argues that the benefit-of-the-bargain rule applies here.

We acknowledge that in the context of claims for consumer fraud, Illinois courts have adopted the benefit-of-the-bargain rule as applied to common law fraudulent misrepresentation, whereby damages are generally calculated by assessing the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true. Gerill Corp. v. Jack L. Hargrove Builders, Inc., 128 Ill. 2d 179, 195, 538 N.E.2d 530, 538 (1989). The rule is based on the theory that a defrauded party is entitled to the benefit of his bargain in a transaction and should be placed in the same position that he would have occupied had the false representations on which he acted been true. Schwitters v. Springer, 236 Ill. 271, 274, 86 N.E.102 (1908). Under the rule, damages are determined by looking at the loss to the plaintiff rather than the gain to the defendant. Petty v. Chrysler Corp., 343 Ill. App. 3d 815, 823, 799 N.E.2d 432, 439 (2003).

10

Here, Mulligan argues that her damages should be calculated based upon the difference between the actual retail value of the jewelry and the value those items would have had if the QVC listed retail value was accurately stated. However, Mulligan's damages model is flawed because before she can calculate her damages, she must establish that she in fact suffered actual damage. 815 ILCS 505/10(a) (West 2004). Whereas damages are the recompense or compensation awarded for the damage suffered, damage is the loss, hurt, or harm which results from the injury. Giammanco v. Giammanco, 253 Ill. App. 3d 750, 758, 625 N.E.2d 990, 997 (1993). Thus, before we can apply the benefit-of-the-bargain rule, we must first consider whether Mulligan has been actually harmed as a result of QVC's alleged deceptive practice.

We note that no reported decision in the country has yet considered a similar private cause of action by a consumer for comparative price deception. These claims have either been brought by the Federal Trade Commission, the various states Attorneys General or by a competitor as an unfair trade practice claim. See, *e.g.*, Niresk Industries, Inc. v. Federal Trade Comm'n, 278 F.2d 337, 340 (7th Cir. 1960) (FTC ordered mail order distributor to cease and desist from falsely representing appliance as being offered at a reduced price), *cert. denied,* 364 U.S. 883, 5 L. Ed. 2d 104, 81 S. Ct. 173; Giant Foods Inc. v. Federal Trade Comm'n, 322 F.2d 977 (D.C. Cir. 1963) (FTC ordered retailer to cease and desist from using deceptive manufacturer's list price in advertising); B. Sanfield, Inc., 168 F.3d 967 (7th Cir.1999) (competitor sued jewelry retailer for deceptive advertising but court on remand ultimately found no damages); May Department Stores Co. v. State ex rel. Woodard, 863 P.2d 967 (Colo. 1993) (Colorado Attorney General sought injunction and civil penalties to punish the retailer for

11

deceptive comparative pricing policies). Mulligan has also failed to cite any authority allowing recovery for the misrepresentation of savings in a consumer transaction.

We begin our analysis by examining the bargain that Mulligan made in the context of the procedural posture of the case. She agreed to purchase some jewelry items for a certain price. At best, QVC induced her to purchase those items at that price by representing to her a certain savings from what it would cost her to purchase the items in the marketplace. Nevertheless, taking Harders' values for the jewelry items Mulligan purchased, Mulligan received the benefit of her bargain because the prices she paid were indeed lower than the prices at which she purportedly could have purchased comparable products in the marketplace. Even if QVC's alleged inflated retail values may have induced Mulligan into altering her purchasing decision because of the represented *bona fide* savings, she suffered no actual pecuniary loss. Thus, she cannot establish that the value of what she received was less than the value of what she was promised. See Giammanco, 253 Ill. App. 3d at 759, 625 N.E.2d at 998.

The cases cited by Mulligan illustrate the point because in each case, the plaintiff did not receive the benefit of the bargain. The plaintiffs were harmed because they paid more than the actual value of the property. See, *e.g.*, Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 285 Ill. App. 3d 201, 673 N.E.2d 369 (1996) (plaintiff purchased company for premium over book value in reliance on false representations about the company's assets); Munjal v. Baird & Warner, Inc., 138 Ill. App. 3d 172, 485 N.E.2d 855 (1985) (plaintiff paid more than the actual value of the real estate misrepresented to have no defects); Gerill Corp., 128 Ill. 2d 179, 538 N.E.2d 530 (1989) (plaintiff paid more than the actual value for a

12

company misrepresented to have few liabilities).  Here, Mulligan paid less than the actual value of the property and, therefore, had no pecuniary loss in the bargain.

Mulligan relies heavily on Giammanco to support her contentions.  However, that case involved a unique set of circumstances, highly distinct from the transaction presented in this case.  There, two brothers, Peter and Joseph, jointly owned a business and were fighting.  Peter offered to buy Joseph out of the business, but Joseph refused to sell to Peter.  They ultimately agreed to sell to an independent third party.  Unbeknownst to Joseph, Peter had a side-deal with the third party and essentially ended up with the business after it was sold to the third party.  Joseph sued Peter and the third party for fraud.  Giammanco, 253 Ill. App. 3d at 751-753, 625 N.E.2d at 993-995.  The trial court held that Joseph failed to adequately plead damages.  Giammanco, 253 Ill. App. 3d at 757, 625 N.E.2d at 997.

On appeal, the court recognized that the benefit-of-the-bargain rule is normally only applied in fraud cases where a buyer has been misled about a physical or pecuniary aspect of the transaction, and acknowledged that the rule did not apply to Joseph because he was not misled in that way.  Giammanco, 253 Ill. App. 3d at 762, 625 N.E.2d at 1000.  However, under the unique circumstances of the case, the court found that Joseph's insistence on an independent buyer was so fundamental to the bargaining process and that Peter's alleged scheme altered Joseph's fundamental assumption regarding the party with whom he agreed to bargain.  Thus, the court held that Joseph's right to bargain with whomever he desired, and to know with whom he was bargaining, was of a pecuniary character, and the deprivation of that right constituted damage for which Joseph was entitled to recover.  Giammanco, 253 Ill. App. 3d at 762-63, 625 N.E.2d at

13

1-07-0616

1000-002.

In contrast, Mulligan knew with whom she was dealing, accepted the jewelry at a particular price for a myriad of different reasons, and ultimately received the benefit of her bargain. As the trial court noted, the only product for which the price Mulligan paid does not fall below Harders' retail value range is the cigar band ring, which purportedly could have cost as much as $2.38 less than what Mulligan paid for it. However, given that Mulligan's own expert indicated that her retail value appraisal had a $5 margin of error, Mulligan has not presented any evidence that she sustained any actual damage. " 'If the plaintiff is not materially harmed by the defendant's conduct, however flagrant it may have been, there may be no recovery.' " Giammanco, 253 Ill. App. 3d at 762, 625 N.E.2d at 1000, quoting Shults v. Henderson, 625 F. Supp. 1419, 1426 (W.D.N.Y. 1986).

Furthermore, to allow Mulligan to recover damages here would bestow a windfall on her. As it has been stated, the purpose of compensatory damages is not to punish defendants or bestow a windfall upon plaintiffs, but rather to make the plaintiff whole. Best v. Taylor Machine Works, 179 Ill. 2d 367, 406, 689 N.E.2d 1057, 1076 (1997). Here, providing Mulligan with compensatory damages is not necessary to make her whole.

Additionally, we reject Mulligan's argument that we should consider the cost of shipping and handling in our analysis of damage. Neither expert applied it in her analysis. Harders explicitly excluded "additional expenses which might be incurred in purchasing," and QVC's listed retail value did not include shipping and handling. Moreover, to consider the cost of shipping and handling of the QVC products would require a fair comparison of the market price

14

which would also include additional costs, by way of, for example, the cost of transportation to the store in Chicago where her expert claims she could have purchased comparable products, or the shipping and handling if the retailer was an Internet retailer. Thus, it would be inappropriate to consider shipping and handling where such a theory does not account for any of the additional costs Mulligan would have incurred had she purchased the products from other retailers. Accordingly, for all of the foregoing reasons, Mulligan has failed to present a genuine issue of material fact that she was actually harmed by the alleged deception and, therefore, summary judgment in favor of QVC was proper on that basis as a matter of law.

Moreover, under a Consumer Fraud Act claim, the plaintiff must have actually been deceived by the defendant's alleged misrepresentations of fact. Barbara's Sales, Inc. v. Intel Corp., 227 Ill. 2d 45, 60, 879 N.E.2d 910, 919 (2007); Shannon v. Boise Cascade Corp., 208 Ill. 2d 517, 525, 805 N.E.2d 213, 217 (2004). As explained in Price v. Philip Morris, Inc., 219 Ill. 2d 182, 269-70, 848 N.E.2d 1, 52 (2005), the deception must have been the cause-in-fact or the "but for" cause of the injury. The relevant inquiry is whether the harm would have occurred absent the defendant's conduct. Evans v. Shannon, 201 Ill. 2d 424, 434-35, 776 N.E.2d 1184, 1190 (2002). Although proximate cause is generally a question of fact for the jury, the lack of proximate cause may be determined by the court as a matter of law where there is no genuine issue of material fact or only one conclusion is clearly evident. Williams v. University of Chicago Hospitals, 179 Ill. 2d 80, 88, 688 N.E.2d 130, 134 (1997). Thus, in the context of this case, Mulligan must present some evidence that the deception created by the allegedly overstated retail value was the "but for" cause of her purchasing decisions. In other words, she must show

that she would not have purchased the jewelry absent the inducement of the discounted price.

Mulligan stated that she would have indeed purchased the jewelry regardless of whether QVC listed a retail value. She acknowledged that she purchased the jewelry from QVC for a myriad of different reasons unrelated to the savings, including the desire for the item, the convenience of shopping from her home, and the hosts' descriptions. Additionally, Mulligan was aware that the retail value displayed by QVC did not "necessarily represent the prevailing retail price in every community." She admitted that she thought the retail prices that QVC often quoted seemed high, evidencing that she was aware that the retail value may not reflect the actual prices in her community. Accordingly, based upon the undisputed facts, Mulligan cannot establish that "but for" the representations about the retail value, she would not have purchased the jewelry. Consequently, because there is no genuine issue of material fact remaining, summary judgment was also proper on that basis as a matter of law.

With respect to Mulligan's claim for unjust enrichment, we note that Mulligan has not argued any points on appeal in support of her claim and, therefore, has waived review of this claim on appeal. 210 Ill. 2d R. 341(h)(7). Notwithstanding, this court has held that such a claim is not a separate cause of action that, standing alone, would justify an action for recovery. "'Rather, it is a condition that may be brought about by unlawful or improper conduct *** such as fraud, ***, and may be redressed by a cause of action based upon that improper conduct.' " Alliance Acceptance Co. v. Yale Insurance Agency, Inc., 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995), quoting Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co., 137 Ill. App. 3d 84, 90-91, 484 N.E.2d 349, 354 (1985). Thus, where the underlying claim for fraud

1-07-0616

is deficient, we have dismissed claims for unjust enrichment. See, *e.g.*, <u>Mosiman v. BMW Financial Services NA, Inc.</u>, 321 Ill. App. 3d 386, 392, 748 N.E.2d 313, 318 (2001). As applied to the present case, in the absence of a private cause of action for consumer fraud, unjust enrichment cannot form the basis for liability. Therefore, the trial court properly granted summary judgment in favor of QVC on that basis as well.

As explained in <u>Avery</u>, Mulligan's failure to establish a private right of action is fatal not only to her cause of action, but to the entire class action. When a class representative has not proven his claim for consumer fraud, the consumer fraud claim asserted on behalf of the class cannot stand. <u>Avery</u>, 216 Ill. 2d at 203, 835 N.E.2d at 863. Accordingly, for all of the foregoing reasons, we affirm the judgment of the circuit court granting summary judgment in favor of QVC and denying summary judgment in favor of Mulligan, and affirm the circuit court's denial of class certification.

Affirmed.

QUINN, P.J., and GREIMAN, J., concur.

17

1-07-0616