# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1303

_____

Joseph McAdams; JBM, LLC;          *
Florian  Homm;          *
Absolute Return Europe Fund, LTD;   *
The Loyr Foundations;       *
Europe Catalyst Fund; Richard Smyth,  *
          *
    Plaintiffs - Appellants,    *
          *
v.          *
          *  Appeal from the United States
William McCord; Daniel Moudy;    *  District Court for the Western
Lynn Bradley; David Colwell,    *  District of Arkansas.
          *
          *
    Defendants,    *
          *
Moore Stephens Frost, PLC,    *
          *
    Defendant - Appellee,   *
          *
_____       *
          *
William McCord,       *
          *
    Counter Claimant,    *
          *
v.          *
          *
Joseph McAdams; Florian Homm,   *
          *
    Counter Defendants,   *
_____       *

|  | * |
| Daniel Moudy, | * |
|  | * |
| Third Party Plaintiff, | * |
|  | * |
| v. | * |
|  | * |
| UCAP, Inc., | * |
|  | * |
| Third Party Defendant. | * |

_____

Submitted: September 24, 2009
Filed: October 20, 2009

_____

Before MELLOY, GRUENDER, and BENTON, Circuit Judges

_____

BENTON, Circuit Judge

UCAP, Inc. was a multi-state provider of mortgage lending and brokerage services. In April 2004, UCAP announced that it believed it would have to restate its financial statements for the periods ending September 30, 2002; December 30, 2002; and March 31, 2003. Six months later, UCAP's wholly-owned, principal operating subsidiary filed for Chapter 11 bankruptcy. UCAP soon ceased operations, and its stock was delisted in 2005.

Joseph McAdams, Florian Homm, Richard P. Smyth, and their affiliated companies sued several UCAP executives and Moore Stephens Frost, PLC — UCAP's outside auditor from November 2001 to July 2003. The investors claimed that the executives and MSF defrauded them by inducing them to invest in UCAP through misrepresentations and false statements about UCAP's financial condition.

-2-

The district court[1] eventually dismissed the second amended complaint, finding that the investors did not meet the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure, and of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737. This court dismissed an earlier appeal. *See* **McAdams v. McCord**, 533 F.3d 924, 928-29 (8th Cir. 2008) (holding the Rule 54(b) motion had been wrongly granted and remanding case). The only issue now is whether the investors state a claim against MSF for federal securities fraud.

## I.

This court reviews de novo a dismissal for failure to state a claim. **Fed. R. Civ. P. 12(b)(6)**; **Ferris, Baker Watts, Inc. v. Ernst & Young, LLP**, 395 F.3d 851, 853 (8th Cir. 2005). The court accepts as true all factual allegations, but is "not bound to accept as true a legal conclusion couched as a factual allegation." **Ashcroft v. Iqbal**, 129 S. Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." **Id.** at 1949. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Id.**, *quoting* **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570 (2008). "The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." **In re K-tel Int'l, Inc. Sec. Litig.**, 300 F.3d 881, 889 (8th Cir. 2002) (quotation omitted).

Section 10(b) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of securities. *See* **15 U.S.C. § 78j(b)**; **17 C.F.R. § 240.10b-5**. Claims require (1) a material misrepresentation or omission, (2) scienter, i.e., a wrongful state

---

[1] The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

of mind, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. ***Dura Pharm., Inc. v. Broudo***, 544 U.S. 336, 341-42 (2005). Under the PSLRA and Federal Rule 9(b), a complaint must state with particularity the circumstances of the alleged fraudulent statement. ***In re K-tel***, 300 F.3d at 890. The complaint must also "state 'with particularity' facts giving rise to a 'strong inference' that the defendant acted with the scienter required for the cause of action." ***Florida State Bd. of Admin. v. Green Tree Fin. Corp.***, 270 F.3d 645, 654 (8th Cir. 2001), *quoting* **15 U.S.C. § 78u-4(b)(2)**.

The district court held that the complaint failed to plead with particularity the circumstances of MSF's alleged fraud, as well as the facts giving rise to a strong inference of scienter. The court accordingly dismissed the investors' federal, state, and common law fraud claims. The court did not address MSF's argument that the complaint also did not adequately plead loss causation. This court, however, may affirm the district court's judgment "on any basis supported by the record." ***K-tel***, 300 F.3d at 889 (citation omitted).

## II.

The complaint contains numerous allegedly fraudulent statements by the executives in press releases and UCAP's financial statements. The complaint further states that MSF assisted the executives to distort UCAP's financial statements to make the company appear like it was a thriving, growing business, when it was not. Section 10(b), however, imposes liability only on a person who makes a material misstatement or omission, not on a person who aids in making the misstatement or omission. *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177-78 (1994). Therefore, MSF is liable only for misstatements or omissions it made.

MSF made two statements, according to the complaint. On UCAP's 2001 and 2002 annual 10-K reports, filed in January 2002 and January 2003, respectively, MSF stated that it conducted its audit in accordance with generally accepted accounting principles and that in MSF's opinion, UCAP's financial statements fairly presented the financial position of UCAP.[2] The complaint further alleges that MSF knew that UCAP's financial statements were not prepared in accordance with GAAP and knew that UCAP's actual financial condition was far weaker than was presented by the financial statements. Therefore, because MSF issued "clean" audit opinions when it knew UCAP's financial statements were not accurate, MSF allegedly made false statements with scienter. This court need not decide whether the complaint adequately states with particularity facts giving rise to a strong inference that MSF acted with

---

[2] The investors assert that MSF is also liable for UCAP's quarterly reports from the first quarter of 2001 through the second quarter of 2003. They argue that the audit opinion on an annual report opines on the quarterly statements previously issued. However, the quarterly statements did not contain an audit opinion and were not attributed to MSF. Therefore, the quarterly reports are not MSF's statements for purposes of Section 10(b). *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 154 (2d Cir. 2007).

scienter when it issued its audit opinions because, as discussed below, the complaint fails to sufficiently plead loss causation.

A complaint must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. To adequately plead loss causation, the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), *citing Dura*, 544 U.S. at 347. Loss causation in a securities fraud case is analogous to the common law's requirement of proximate causation. *Schaaf*, 517 F.3d at 550. The plaintiff must show "that the loss was foreseeable *and* that the loss was caused by the materialization of the concealed risk." *Id.* (emphasis in original) (citation omitted).

The complaint alleges that McAdams invested over $3 million in UCAP, that Homm invested over $6 million, and that Smyth invested $2 million. The complaint then broadly alleges that "as a direct and proximate result of Defendants' fraudulent misrepresentations and omission of material facts, Plaintiffs have been damaged in amounts to be determined at trial but which exceed $10 million." This threadbare, conclusory statement does not sufficiently allege loss causation. It does not specify how two statements by MSF, as compared to the complaint's long list of alleged misrepresentations and omissions by the executives, proximately caused the investors' losses.

The complaint alleges that the investors suffered damages because they purchased stock at "artificially inflated prices." This allegation is insufficient under *Dura*. Specifically, a stock's subsequent loss in value can reflect a variety of factors other than the earlier misstatement. *Dura*, 544 U.S. at 342-43 ("When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other

events, which taken separately or together account for some or all of that lower price."). The complaint states that the truth about UCAP's financial position was revealed on April 23, 2004, when UCAP announced that it would need to restate several financial statements. However, the complaint does not state the value of UCAP's stock when the investors made their investments, or its value right before, or right after, the need for the restatement was announced.

Without these facts, the complaint does not show that the investors' losses were caused by MSF's misstatements. This failure is revealing because UCAP's financial troubles were public knowledge before the announcement of the need for a restatement in April 2004. Specifically, in November 2003, UCAP disclosed in an 8-K announcement that its wholly-owned, principal operating subsidiary was in imminent danger of losing its only line of credit and that UCAP had sold a controlling share of its stock to avoid the subsidiary's bankruptcy. The complaint's lack of specific allegations of the value of UCAP stock defeats the plausibility of the investors' claim that MSF's audit opinions in January 2002 and 2003 caused their losses.[3]

## III.

The judgment of the district court is affirmed.

---

[3] The parties agree that the investors' claims under the Arkansas securities laws and for common law fraud fail if their Section 10(b) allegations are insufficient to state a claim.