**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DION STARR,
              *Plaintiff-Appellant,*

          v.

COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY SHERIFFS
DEPARTMENT; LEROY BACA, Sheriff;
official capacity,
              *Defendants-Appellees.*

No. 09-55233

D.C. No.
2:08-cv-00508-
GW-SH
Central District of
California,
Los Angeles

ORDER

Filed October 5, 2011

Before: Stephen S. Trott and William A. Fletcher,
Circuit Judges, and Charles R. Breyer, District Judge.*

Order;
Dissent by Judge O'Scannlain

---

## ORDER

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f).

---

*The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

18743

O'SCANNLAIN, Circuit Judge, joined by GOULD, TALLMAN, BYBEE, CALLAHAN, BEA, M. SMITH, and IKUTA, Circuit Judges, dissenting from the order denying rehearing en banc:

A mere two years ago, the Supreme Court rejected the argument that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), applied only to antitrust and similarly complex commercial cases, stating that its "decision in *Twombly* expounded the pleading standard for 'all civil actions.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (quoting Fed. R. Civ. P. 1). The panel majority in this case disregards that holding, suggesting instead that the *Twombly/Iqbal* standard does not apply to all civil actions. In reaching this erroneous result, the panel also resurrects a theory of supervisory liability for constitutional torts that the Supreme Court has foreclosed. I therefore must dissent from the regrettable failure of our court to rehear this case en banc.

I

Dion Starr, a former inmate of Los Angeles County's Men's Central Jail, alleges that on January 27, 2006, correctional officers willfully opened his cell to allow other prisoners to stab him. He further alleges that the officers joined in the beating and then intentionally prevented him from receiving prompt medical care. Based on this incident, Starr sued, among others, Sheriff Leroy Baca of the Los Angeles County Sheriff's Department (LASD).

Starr alleges that Sheriff Baca violated his Eighth Amendment rights by failing to take actions to reduce the risk of inmate-on-inmate violence. In support of this theory, Starr notes ten incidents of inmate-on-inmate violence that occurred in L.A. County jails from July 2002 to October 2005.

The incidents cited by Starr have little to do with each other and nothing to do with the assault on Starr. None of the inci-

dents involved Starr or the inmates and officers who allegedly assaulted him. As such, the complaint includes little more than the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory allegations, [that] do not suffice" to survive a motion to dismiss for failure to state a claim. *Iqbal*, 129 S.Ct. 1949.

## II

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must allege facts sufficient to raise "a plausible entitlement to relief." *Twombly*, 550 U.S. at 559. Because *Twombly* involved antitrust claims—a unique type of claim prone to burdensome discovery requests—some speculated that its "plausibility" standard might be limited to that context. The Supreme Court eliminated any such speculation in *Iqbal*, making clear that *Twombly* "was based on our interpretation and application of Rule 8." 129 S. Ct. at 1953. Rule 8, the Court emphasized, "governs the pleading standard 'in all civil actions and proceedings in the United States district courts.' " *Id.* (quoting Fed. R. Civ. P. 1).

The panel majority nonetheless finds a "perplexing" conflict between *Twombly/Iqbal* and another pair of cases decided by the Supreme Court "during roughly the same period" that "appear[ ] to have applied the original, more lenient version of Rule 8(a)." Slip Op. at 9819. The panel majority complains that "it is difficult to know in cases that come before us whether we should apply . . . the more demanding standard" of *Twombly* and *Iqbal* or "the usual lenient pleading standard under Rule 8(a)." *Id.* at 9821.

I fail to see what the majority finds so "perplexing." The first allegedly conflicting case, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), was decided five years before *Twombly* and was explicitly distinguished in *Twombly* as a case in which the court of appeals had required the plaintiff to plead specific facts *beyond* those necessary "to state a claim to relief that is

plausible on its face." *See Twombly*, 550 U.S. at 570. Likewise, the second was a per curiam reversal in which a dismissed complaint alleged palpably sufficient facts. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Neither case supports the majority's conclusion that *Twombly/Iqbal* does not apply to all civil actions.

Though the majority ultimately professes to apply something like the *Iqbal* plausibility standard, in the end, it applies what might be deemed "*Iqbal* Lite" ("Same insufficient complaints, fewer dismissals!"). The majority states that a complaint's factual allegations must "plausibly suggest an entitlement to relief," Slip Op. at 9821, but it wrongly requires that the determination of whether this standard is met be made in light of whether it would be "unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

The majority thus creates a sliding scale in which the greater the anticipated discovery expense, the greater the showing of plausibility that is required. The Supreme Court has rejected such an approach. *See Iqbal*, 129 S. Ct. at 1953 ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process."). Such a reading is nothing more than a thinly veiled artifice to confine *Twombly* to cases in which discovery is especially costly. In doing so, the majority inexplicably muddies the waters made crystal clear by the Supreme Court's pronouncement in *Iqbal*.

Today's unfortunate decision yet again places the Ninth Circuit on the wrong side of a circuit split. Although courts have struggled to determine precisely what *Iqbal* requires, *see, e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010), there was—until now—no dispute that *Twombly/Iqbal* is the standard that applies.[1] The panel majority's

---

[1] *See, e.g.*, *Sepulveda-Villarini v. Dep't of Educ.*, 628 F.3d 25, 28-29 (1st Cir. 2010) ("The make-or-break standard . . . is that the combined allega-

decision leaves our district court judges in the unenviable position of reconciling the instructions of the Supreme Court with those we announce today.

## III

### A

The panel majority's analysis of the facts demonstrates what little resemblance its standard bears to the rule articulated in *Twombly* and *Iqbal*. Starr alleges an Eighth Amend-

---

tions, taken as true, must state a plausible, not a merely conceivable, case for relief."); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[W]e apply a plausibility standard . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[*Iqbal*] makes clear that the *Twombly* 'facial plausibility' pleading requirement applies to all civil suits in the federal courts."); *Francis v. Giacomelli*, 588 F.3d 186, 189 (4th Cir. 2009) (applying the *Iqbal* standard of whether the complaint "states plausible claims" for relief); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ("To avoid dismissal, a plaintiff must plead 'sufficient facts to state a claim to relief that is plausible on its face.' " (quoting *Iqbal*, 129 S.Ct. at 1949)); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 243 (6th Cir. 2010) (requiring that the pleader allege " 'enough facts to state a claim to relief that is plausible on its face' " (quoting *Twombly*, 550 U.S. at 570)); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[*Iqbal*] clarified that *Twombly*'s plausibility requirement applies across the board, not just to antitrust cases."); *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) ("The complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " (quoting *Iqbal*, 129 S. Ct. at 1949)); *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010) ("Under 12(b)(6), we review for plausibility."); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) ("The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.' " (quoting *Twombly*, 550 U.S. at 570)); *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) ("To survive a motion to dismiss, the pleadings must suggest a plausible scenario that shows that the pleader is entitled to relief."); *Juniper Networks, Inc. v. Shipley*, __ F. 3d __, 2011 WL 1601995 (Fed. Cir. Apr. 29, 2011) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (quoting *Iqbal*, 129 S.Ct. at 1949)).

ment claim based on the conditions of his confinement. He therefore must plead "factual content that allows the court to draw the reasonable inference," *Iqbal*, 129 S. Ct. at 1949, that he was injured as a result of "an excessive risk to inmate health or safety" that Sheriff Baca "kn[ew] of and disregard-[ed]," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Sheriff Baca must have been both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also [have] draw[n] the inference*." *Id.* (emphasis added).

The majority contends that "the factual allegations in Starr's complaint plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr." Slip Op. at 9822. But the majority never explains—indeed, cannot explain—how it is able to draw this inference.

The facts pleaded by Starr do not plausibly suggest that Baca "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brennan*, 511 U.S. at 837. To be sure, a *possible* explanation for ten varied and discrete incidents of inmate-on-inmate violence amongst a prison population of 20,000 might be that the leader of the prison bureaucracy is callously indifferent to such violence. But *possible* is not sufficient. *Twombly* and *Iqbal* require a *plausible* explanation and held that an explanation is not plausible when an " 'obvious alternative explanation' " exists. *Iqbal*, 129 S. Ct. at 1951-52 (quoting *Twombly*, 550 U.S. at 567).

Here, "the obvious alternative explanation" for the inmate-on-inmate assaults is that it is virtually impossible for an administrator in charge of 20,000 inmates—many of whom are violent—to ensure that they never assault each other. Starr's complaint amounts to nothing more than a general indictment of the LASD. The LASD is the largest sheriff's department in the nation. With a budget of $2.4 billion and a staff of 18,000, it is charged with directly protecting over 4

million people in the 9.8 million person county. It also provides critical support to city police departments by housing all of Los Angeles County's nearly 20,000 locally jailed inmates. *See* Los Angeles County Sheriff's Department, http://lasheriff.org/aboutlasd/execs.html. While size alone does not absolve its leadership of responsibility for its shortcomings, it does underscore the difficulty of attributing any specific incident to the deliberate indifference of the official at the top of this large bureaucracy. Slip Op. at 9826-27 (Trott, J., dissenting). These ten incidents suggest—at most—that Sheriff Baca is an ineffective leader. They do not plausibly suggest that he is deliberately indifferent to inmate violence. *Cf. Iqbal*, 129 S. Ct. at 1937 (concluding that the Justice Department's detention of a disproportionate number of Arab Muslims in the wake of 9/11 did not plausibly suggest purposeful discrimination because the "obvious alternative explanation" was that the disparate impact was "incidental").

B

The majority's conclusion has the effect of inserting *respondeat superior* liability into section 1983 despite the Supreme Court's admonition that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1949 (rejecting the petitioner's theory of "supervisory liability" in which "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"). "In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

As a result, even assuming that Sheriff Baca was deliberately indifferent to an excessive risk of inmate violence, Starr still cannot recover unless Baca's indifference caused the

assault on Starr. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (requiring a "sufficient causal connection" between the defendant's wrongful conduct and the constitutional violation alleged). Thus, to state a cause of action, a plaintiff must "allege facts sufficient to show that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (internal quotation marks omitted).

Starr's allegations get nowhere close to this standard. As noted above, Starr alleges that the prior incidents of inmate-on-inmate violence were caused by correctional officer negligence—e.g., poor supervision and misclassification of prisoners. But according to Starr's own account, *his* assault was caused by a group of sadistic correctional officers who intentionally helped several inmates stab Starr twenty-three times and then, unsatisfied, joined in the assault themselves. Thus, even if Sheriff Baca had solved the alleged problems of lax supervision and inmate misclassification, it is difficult to see how that would have stopped this assault.

Yet the panel resists the notion that Starr must adequately plead a nexus between Baca's alleged deliberate indifference and Starr's injury. Instead, it infers deliberate indifference from violent episodes that do not have a common, concrete cause that a high-level administrator could readily remedy. In resisting any attempt to require Starr to tie the prior incidents to his injury, the majority reveals its true purpose: to impose *respondeat superior* in any jurisdiction which has a history of prior prison problems, no matter how unrelated those problems are to the plaintiff's injuries.

In allowing Starr's claim to proceed, this court creates a road map for circumventing the rule against vicarious liability in constitutional litigation. First, allege a constitutional violation committed by a low-level employee of a large adminis-

trative agency. Next, list a number of tangential bad acts committed by other members of that agency. And, finally, fault the head of that agency for not sufficiently addressing the general problem of his subordinates' poor behavior. Indeed, it is hard to see why every L.A. County prisoner who is assaulted by another prisoner does not now have a viable claim against Sheriff Baca.

## IV

The court's ruling today conflicts with *Iqbal* in its statement of the pleading standard, in its application of the pleading standard, and in its far-reaching conclusions regarding supervisory liability. By failing to rehear this case en banc, we fail to correct these errors and once again must wait for the Supreme Court to do so for us.

I respectfully dissent.