# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1838

———————————————

Rand-Heart of New York, Inc.; Michael Rodolico; Ian Henderson; Antonino Floridia; Matthew Dudevoir; David Hall; Tammy Hall, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

James P. Dolan; Vicki J. Duncomb

*Defendants - Appellees*

———————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

———————

Submitted: November 17, 2015
Filed: February 10, 2016

———————

Before SMITH, BYE, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Rand-Heart of New York, Inc. brought a putative class action on behalf of purchasers of Dolan Company's securities between August 1, 2013 and January 2,

2014, under Sections 10(b) and 20(a) of the Securities Exchange Act. The District Court dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Having jurisdiction under 28 U.S.C. § 1291, this court reverses.

## I.

DiscoverReady—a subsidiary of Dolan Company—performed litigation support, working mostly for Bank of America. In May or June 2013, Bank of America met with James P. Dolan (CEO of Dolan Company) and other DiscoverReady representatives. Bank of America noted concerns about Dolan Company's finances, suspended discussions about a possible colocation agreement, and indicated it would send no new work to DiscoverReady until the financial concerns were resolved. A DiscoverReady representative stated, "It was our impression and our understanding that in order to continue to do work with the Bank of America, we have to take care of The Dolan Company's financial problems." Dolan reported what transpired at the meeting to Dolan Company's Board of Directors, which proceeded to authorize DiscoverReady for sale. Bank of America stopped sending new work to DiscoverReady in June.

On August 1, Dolan Company issued a press release announcing its financial results for the second quarter ending June 30, 2013. It reported a net loss of $4.62 per share, on revenues of about $47 million. It announced a plan to sell assets in order to raise cash, but also reported that DiscoverReady revenues had grown by 18%. Dolan Company also released a Form 10-Q, which stated:

> In order to operate profitably on a continuous basis in the future, the Company must increase revenue and eliminate costs to achieve and maintain positive operating margins. . . . The Company's ability to generate sufficient cash flows in 2013 has been negatively impacted by the business challenges in its mortgage default foreclosure and public notice business. These challenges make it probable

that the Company will be unable to comply with certain of its financial covenants in its senior secured credit facility as measured on the last day of the third quarter of 2013. The Company is currently in discussions with its lenders regarding resetting the financial covenants applicable to the third quarter and future periods. Any failure to comply with these covenants in the future may result in an event of default. . . . If the Company is unable to repay such indebtedness, the banks could foreclose on these assets.

Also on August 1, Dolan spoke with stock analysts. The District Court found actionable for fraud the italicized statements during the conference:

*For 2013, we expect both DiscoverReady and the litigation support segment to grow at double-digit rates over the prior year with positive EBITDA leverage.* However, we must point out that we expect DiscoverReady's third quarter revenues to be below last year's all time record revenue quarter.

*We make this comment not to dampen enthusiasm about our growth prospects for DiscoverReady, but to set proper expectations for a business that may experience lumpiness on a quarter-to-quarter basis.*

Asked to elaborate about "lumpiness," Dolan stated:

Well, it's hard to be very specific about the lumpiness now without getting into details we normally do not disclose. . . . We had a number of matters that were in works in the first half [of 2013], all of which made for a very strong quarter. We don't see those right now in the second half of the year but these things do come and they come sometimes unexpectedly, sometimes quickly. So given the lack of forward visibility on this kind of

business, we have to be cautious in how we describe things.

On November 12, 2013, Dolan issued a press release and filed its Form 10-Q ending September 30. The 10-Q reported that the decline in revenue "exceeded our expectations," largely due to "a reduction in new work from [DiscoverReady's] largest customer, a reduction that we identified towards the end of the quarter. We believe this reduction resulted from the customer's evaluation of the Company's overall financial condition." The closing price for Dolan Company stock fell to $2.08 on November 11, to $1.05 on November 12, to $0.90 on November 13.

On January 2, 2014, Dolan Company issued a final press release announcing the appointment of a Chief Restructuring Officer and a Continuing Listing Standards Notice from the New York Stock Exchange. Share prices then fell by $0.14. In March, Dolan Company filed a Chapter 11 bankruptcy.

II.

Section 10(b) of the Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." **15 U.S.C. § 78j(b)**. "SEC Rule 10b-5 implements [§ 10(b)] by making it unlawful to, among other things, 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36 (2011), *quoting* **17 C.F.R. § 240.10b-5(b)**. Section 10(b) and Rule 10b-5 claims require the claimant to show (1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule, (2) loss-causation, (3) scienter, and (4) economic

-4-

harm. ***In re K-tel Intern., Inc. Sec. Litig.***, 300 F.3d 881, 888 (8th Cir. 2002). Section 20(a) imposes secondary liability on every person "who, directly or indirectly, controls any person liable under any provision of this chapter or any rule or regulation thereunder. . . ." **15 U.S.C. § 78t(a)**.

Rand-Heart brought a class action suit alleging Dolan made material misrepresentations and omissions about DiscoverReady's financial stability. It alleged a class-period of August 1, 2013 through January 2, 2014. The district court granted Dolan's motion to dismiss both the § 10(b) and § 20(a) claims. It found that Rand-Heart failed to allege scienter under § 10(b) and Rule 10b-5, thereby precluding secondary liability under the control-person theory of § 20(a). It further held Rand-Heart failed to establish loss-causation for the period between November 12, 2013 and January 2, 2014. The district court also denied Rand-Heart's motion to amend the complaint.

This court reviews de novo the dismissal of a complaint for failure to state a claim. ***In re K-tel Intern.***, 300 F.3d at 888-89. To allege a securities-fraud claim, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." **15 U.S.C. § 78u-4(b)(1)**. The complaint is construed liberally, all factual allegations taken as true, but "conclusory or catch-all assertions of law and unwarranted inferences" are rejected. ***In re K-Tel Intern.***, 300 F.3d at 889. This court may consider the pleadings, materials embraced by the pleadings, and public records. ***Id.***

A.

Rand-Heart argues the district court erred in finding inadequate allegations of scienter. The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." **15 U.S.C. § 78u-**

**4(b)(2)**. Inferences of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The question "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*, *quoted in Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023, 1029 (8th Cir. 2011).

Scienter can be established by a deceitful or manipulative state of mind, severe recklessness, or motive and opportunity. *In re K-Tel Intern.*, 300 F.3d at 893. The district court found no motive, noting Dolan never sold his shares of the company stock. *See Fla. State Bd. of Admin. v. Green Tree Financial Corp.*, 270 F.3d 645, 661 (8th Cir. 2001) ("[T]he magnitude of [the CEO's] compensation package, together with the timing coincidence of an overstatement of earnings at just the right time to benefit [the CEO], provides an unusual, heightened showing of motive to commit fraud."). This does not end the inquiry. However, "without a showing of motive or opportunity 'other allegations tending to show scienter would have to be particularly strong in order to meet the [Act's] standard." *In re K-Tel Intern*, 300 F.3d at 894 (internal citations omitted), *quoting id.* at 660.

Rand-Heart maintains it adequately pled scienter by alleging that Dolan had been severely reckless. Severe recklessness is defined as "highly unreasonable omissions or misrepresentations involving an extreme departure from the standards of ordinary care, and presenting the danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* at 893 (internal quotations omitted).

Rand-Heart first argues Dolan acted recklessly in making two omissions of material fact: that Bank of America (1) suspended discussions of a colocation agreement and (2) demanded restructuring. "Silence, absent a duty to disclose, is not

misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988), *quoted in MEMC*, 641 F.3d at 1029. Disclosure is required "only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *MEMC*, 641 F.3d at 1028, *quoting* **17 C.F.R. § 240.10b-5(b)**. Dolan never publicly spoke about the failed colocation agreement, nor the restructuring demand. The question is whether these alleged omissions made statements about the Company's financial state "misleading."

Dolan warned of the Company's precarious financial state during the August 1 conference call and in the Form10-Q. On the call, he forecasted low third-quarter revenues, explaining that the Company "had a number of matters that were in works for the first half [of 2013]" no longer at play "in the second half of the year. . . ." The Form 10-Q stated "to operate profitably on a continuous basis in the future, the Company must increase revenue and eliminate costs" and financial challenges "make it probable that the Company will be unable to comply with certain of its financial covenants." It further cautioned, "If the maturity of the indebtedness is accelerated, sufficient cash resources to satisfy the debt obligations may not be available and *the Company may not be able to continue operations as planned.*" (Emphasis added). "Cautionary language which relates directly to that which the Plaintiffs claim to have been mis[leading], if sufficient, renders the alleged misrepresentation or omissions immaterial as a matter of law." *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004). Due to these disclosures of the company's financial problems, this court does "not believe the inference of scienter is as compelling as the more innocent, simpler inference that [Dolan] did not believe [he] had a continuing duty to disclose information. . . ." *MEMC*, 641 F.3d at 1030, *citing Tellabs*, 551 U.S. at 324.

Rand-Heart next argues that Dolan was reckless in failing to disclose that Bank of America had stopped sending new work to DiscoverReady in May or June 2013. Bank of America was DiscoverReady's biggest client, providing over 50% of

DiscoverReady's work. In the second half of 2013, however, Bank of America work sharply declined. The complaint quoted DiscoverReady's Chief Operating Officer's acknowledgment: "We were, our work, our revenues were dropping and our case origination had dropped, as I said earlier, to almost nothing from Bank of America."[1] By May or June 2013, DiscoverReady had "completed a large document review project for Bank of America" immediately causing "great concerns." This decline prompted the Company's Board in June 2013 to "authorize the marketing of DiscoverReady for sale." Taking these allegations as true, DiscoverReady's financial instability caused by the decline in Bank of America was, at the least, "so obvious that [Dolan] must have been aware of it." *In re K-tel Intern*, 300 F.3d at 893. The facts pled are sufficient to survive a motion to dismiss.

B.

Dolan maintains that his August 1 statements about "double-digit" growth and "lumpiness" are protected by the Act's safe-harbor provision. A "forward-looking statement" is not actionable for fraud if immaterial, accompanied by "meaningful cautionary language," or made without actual knowledge that it was false or misleading. *Julianello v. K-V Pharmaceutical Co.*, 791 F.3d 915, 920 (8th Cir. 2015), *citing* **15 U.S.C. § 78u-5(c)(1)**.

---

[1] At oral argument, counsel for Dolan argued this statement (from page 49 of the transcript) addresses information the COO had in September, after the allegedly misleading statements in August. Counsel pointed to a quote from page 104 of the transcript—"So revenues started to fall probably in September, is my recollection, and through the fall and into the New Year." However, the Complaint's statement (in-text) answered a question about revenue declines during "the second half of 2013." It is not clear that the quote on page 104 provides the context for the broad statement about revenues falling in the second half of 2013 on page 49. This issue may be addressed at the summary judgment stage.

Even if the statements were "forward-looking," Dolan's argument fails. Statements about DiscoverReady's expected performance are not immaterial, and the complaint sufficiently alleges Dolan had actual knowledge that the statements were, at least, misleading. Additionally, the statements were not accompanied with "meaningful cautionary language." Dolan cites as cautionary language the following excerpts from the 2012 Form 10-K, filed on March 8, 2013:

> Our failure to comply with the covenants in our debt instruments could result in an event of default that could adversely affect our financial condition and ability to operate our business as planned if we are not successful in obtaining a waiver of our failure to comply with our covenants.
> . . . .
> DiscoverReady's business revenues have traditionally been concentrated among a few customers and if these large repeat customers choose to manage their discovery with their own staff or with another provider and if we are unable to develop new customer relationships, our operating results and the ability to execute our growth strategy at DiscoverReady may be adversely affected.

Even if cautionary, these excerpts are not *meaningfully* cautionary; they are not "company-specific warnings based on a realistic description of the risks applicable to the particular circumstances. . . ." *Id.* at 922. Rather, the excerpts are "merely a boilerplate litany of generally applicable risk factors." *Id.* Dolan's statements are not protected by the Act's safe-harbor provision.

The district court erred in dismissing the § 10(b) and Rule 10b-5 claim for failure to state a claim, and thus also erred in dismissing secondary liability claim under § 20(a).[2]

---

[2] Rand-Heart contends it should have been permitted to amend the complaint. The request to amend stated, "If this Court is inclined to grant Defendants' motion [to

III.

Rand-Heart argues the district court erred in finding no loss-causation for the period between November 12, 2013 and January 2, 2014. "Loss causation in a securities fraud case is analogous to the common law's requirement of proximate causation. The plaintiff must show that the loss was foreseeable *and* that the loss was caused by the materialization of the concealed risk." *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009) (internal citations omitted). "A complaint must 'provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.'" *Id.*, *quoting Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The securities statutes make fraud actions available "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharm*, 544 U.S. at 345. *See also* **15 U.S.C. § 78u-4(b)(4)** (requiring plaintiffs to prove the defendant "caused the loss").

According to Rand-Heart's fraud-on-the-market theory, Dolan misled investors in August by concealing information about the lack of new Bank of America work and the need to restructure. Dolan fully disclosed on November 12, 2013, telling securities analysts that litigation support revenues "decreased primarily as a result of a reduction in new work from DiscoverReady's largest customer." Dolan believed the reduction "resulted from the customer's evaluation of the Company's overall financial condition." On that same day, Dolan Company's Form 10-Q stated that Discover Ready's third quarter revenues "decreased primarily as the result of a period of reduced work from [its] largest customer." The 10-Q reported an amended credit agreement, requiring $50 million more in cash "through one or more liquidity

dismiss], Plaintiffs respectfully request that any such dismissal be without prejudice to their ability to cure any defects via amendment." Because the dismissal is reversed, this court need not consider whether the district court properly denied leave to amend the complaint.

transactions separate from its operating activities, such as a sale of assets or issuance of equity or subordinated debt, by March 31, 2014. . . ." The stock price fell to $2.08 on November 11, to $1.05 on November 12, to $0.90 on November 13.

Despite the November 12 disclosures, Rand-Heart contends the fraud was not fully revealed until a January 2 press release announcing the new restructuring officer. The stock price then fell by $0.14 (20%). A drop in stock price is not necessarily caused by an earlier misrepresentation. Lower stock prices "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharm*, 544 U.S. at 343. Rand-Heart must show that Dolan's fraud—"and not other events"—caused the price to fall after the January 2 press release. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 550 (8th Cir. 2008).

Nothing in the January 2 press release corrects previous misrepresentations. "Corrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time, because, if investors already know the truth, false statements won't affect the price." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011) (internal quotations omitted). Announcing the appointment of a restructuring officer on January 2 does not correct a misrepresentation; it elaborates on the previously disclosed plan to restructure. "In the financial markets, not every bit of bad news that has a negative effect on the price of a security necessarily has a *corrective* effect for purposes of loss causation." *Meyer v. Greene*, 710 F.3d 1189, 1202 (11th Cir. 2013). *See also In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009) ("To be corrective, the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company.").

The district court did not err in finding no loss-causation for the period between November 12 and January 2.

* * * * * * *

The district court's decision is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____