RONALD AFFRUNTI, Plaintiff-Appellee, v. VILLAGE FORD SALES, INC., Defendant-Appellant.

Third District    No. 3—91—0911

Opinion filed August 7, 1992.

Steven J. Prodehl, of June & Prodehl, of Joliet, for appellant.

Ronald L. Caneva and John J. Hornicak, both of Luzbetak & Caneva, of Lockport, for appellee.

JUSTICE GORMAN delivered the opinion of the court:

The plaintiff, Ronald Affrunti, filed suit against the defendant, Village Ford Sales, Inc., to recover the difference between the price he paid for an automobile and the advertised sale price. The trial court held that the defendant had a duty to inform the plaintiff of the advertised price and rendered judgment in favor of the plaintiff in the amount of $1,529 plus costs. The defendant appeals. Additionally, the plaintiff seeks attorney fees for this appeal.

At trial, the plaintiff testified that on August 4, 1988, he went to the defendant's dealership in his search to buy a family car. He parked by the used car lot and was met by Fred Galaraza, a salesman for the defendant. According to the plaintiff, he saw many used cars on the lot, including four Chevrolet Celebrities. Only one of the Celebrities was a 1986 model. He did not look at all the cars on the used car lot, and he did not know what other models were there.

The plaintiff became interested in the 1986 Celebrity, which he stated was the only blue one. Galaraza told the plaintiff that the car had 29,000 miles on it. The plaintiff confirmed this, and also checked the odometers on the other three Celebrities. Their readings were all above 50,000 miles. The plaintiff asked Galaraza the price of the 1986 Celebrity because it was not listed on the car. Galaraza replied that he did not know and would have to check in the office. However, Galaraza did not go back to the office. Instead, after the plaintiff looked at a few other cars, Galaraza told him that the price of the Celebrity was $8,600. The plaintiff test-drove the car and concluded a deal with Galaraza for $8,524, which included a trade-in and a discount for a front-end alignment.

The plaintiff further testified that he returned home a few hours later and read the defendant's newspaper advertisement which listed the blue 1986 Celebrity with 29,000 miles on it at $6,995. The next day he called Galaraza and told him that he had sold the Celebrity for an amount higher than the advertised price. Galaraza put the plaintiff on hold and then came back on the line and said, "By God, it is the same." The plaintiff asked to redo the deal. Galaraza again put the plaintiff on hold. When he came back on the line, Galaraza told the plaintiff that the car in the advertisement had been sent to auction. The following day, the defendant's assistant manager told the plaintiff that the car in the advertisement had been sent to auction and there was nothing he could do about the deal.

Joseph Constanzo, the defendant's sales manager, testified that Galaraza was no longer employed by the defendant at the time of trial. He stated that the records of the sale in question were no longer available. He further stated that there were no records to show how many Chevrolet Celebrities were either on the lot or sold in 1988.

Constanzo also testified that it was the general manager's responsibility to place advertisements for the sale of cars in the local newspaper. He stated that the advertisements are not kept at the dealership, and the sales staff are not notified about the ads placed for a particular car. According to Constanzo, the prices of the cars are listed on the cars themselves, and the sales staff are permitted to negotiate with the customers. Finally, Constanzo stated that the prices listed in the advertisements do not mean that they are the prices of the cars listed, and the sales staff can sell the cars for a higher price.

A copy of the advertisement in question was introduced into evidence.

The trial court held that the defendant had a duty to inform the plaintiff of the advertised price of the car. Accordingly, it awarded the plaintiff the $1,529 difference between the purchase price and the advertised price, as well as costs.

On appeal, the defendant argues that its agents' acts did not constitute a deceptive or unfair practice under the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). We disagree.

■ Section 2 of the Consumer Fraud Act forbids unfair or deceptive acts or practices, including the use of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact, in the conduct of any trade or business with the intent that others rely on the deceptive practices. (Ill. Rev. Stat. 1991, ch. 121½, par. 262.) A misrepresentation is material if it relates to a matter upon which the plaintiff could be expected to rely in determining to engage in the conduct in question. *Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312.

To fall within the purview of the Act, it need only be shown that the defendant is engaged in a trade or commerce and that he has committed unfair or deceptive acts or practices in the conduct of that trade or commerce. (*People ex rel. Hartigan v. Knecht Services* (1991), 216 Ill. App. 3d 843, 575 N.E.2d 1378.) The Act incorporates the definition of "deceptive trade practice" set forth in the Uniform Deceptive Trade Practices Act. (Ill. Rev. Stat. 1991, ch. 121½, par. 312.) This definition includes "advertis[ing] goods or services with the intent not to sell them as advertised." Ill. Rev. Stat. 1991, ch. 121½, par. 312(9).

■ In the instant case, while the defendant's sales manager testified that the car prices were listed on the cars themselves, the plaintiff stated that no price was listed on the 1986 Celebrity. The plaintiff asked the salesman, Galaraza, the price of the car. However, after first stating that he did not know the price, Galaraza quoted a price that was higher than the advertised price. Although the price was negotiable, the defendant ought to have informed the plaintiff of the advertised sale price since the advertisement was placed to draw in customers. There is no question that the price was a material fact. We find that the evidence presented supports the conclusion that the defendant advertised the car with the intent not to sell it as advertised. Therefore, the defendant's failure to disclose the advertised sale price constituted deceptive conduct under the Act.

The defendant also argues that the trial court's finding that the car bought by the plaintiff was the same one advertised was against the manifest weight of the evidence. Again, we disagree.

For a judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Acosta v. Chicago Transit Authority* (1976), 39 Ill. App. 3d 80, 349 N.E.2d 613.

■ In the instant case, both the advertised car and the one the plaintiff purchased were 1986 Chevrolet Celebrities with 29,000 mile odometer readings. The plaintiff testified that the other three Celebrities he saw all had readings of over 50,000 miles. Furthermore, the defendant's sales manager claimed that the sales records involving the car the defendant purchased were no longer available. He also claimed that there were no records to show how many Chevrolet Celebrities were either on the lot or sold in 1988. Considering this evidence, we find that it was not against the manifest weight of the evidence for the trial court to conclude that the car advertised was the car sold to the plaintiff.

Finally, the plaintiff requests an award of his reasonable attorney fees for this appeal.

Section 10a(c) of the Consumer Fraud Act provides that a court may award reasonable attorney fees to a prevailing party in "any action brought by a person under this Section." (Ill. Rev. Stat. 1991, ch. 121½, par. 270a(c).) Where the claim must be litigated not only at trial, but also on appeal, the attorney fees incurred by the prevailing party in connection with the appellate proceedings must be deemed an integral part of that claim and should be recoverable under the statute. *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.

■ Here, the plaintiff's attorney has provided an itemized bill for the services expended in this appeal. We find that his total of $1,937.50 is reasonable. We also find that allowing the recovery of appellate attorney fees is consistent with the purpose of the Consumer Fraud Act, which is to eradicate deceptive and unfair business practices. We therefore award the plaintiff $1,937.50 in attorney fees.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed and the plaintiff is awarded $1,937.50 in attorney fees.

Affirmed with fees awarded.

McCUSKEY and SLATER, JJ., concur.