# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### Martinez v. River Park Place, LLC, 2012 IL App (1st) 111478

---

| | |
|---|---|
| Appellate Court Caption | AL A. MARTINEZ and GREG CAMPOS, Plaintiffs-Appellants, v. RIVER PARK PLACE, LLC, an Illinois Limited Liability Company, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1478 |
| Filed | November 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendant developer's requirement that plaintiffs' pay a substantial increase in the price of the condominiums they had contracted to purchase at lesser prices or terminate the contracts in return for their earnest money deposits, the trial court properly awarded plaintiffs their deposits and nominal damages, notwithstanding plaintiffs' contention that they were entitled to the difference between the original price and the increased price based on defendant's failure to act in good faith, since plaintiffs failed to prove the measure of their damages. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-6438; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Norman J. Lerum, P.C., of Chicago (Norman J. Lerum, of counsel), and James Messineo & Associates, of Inverness (James M. Messineo, of counsel), for appellants.

Fuller & Fuller, of South Barrington (Warren R. Fuller, of counsel), for appellee.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Connors concurred in the judgment and opinion.*

## OPINION

¶ 1     Plaintiffs, Al A. Martinez and Greg Campos, appeal from an order of the circuit court of Cook County finding that plaintiffs' damages arising from defendant's breach of their contracts to purchase two condominium units in a planned development in Elgin, Illinois, were limited to a return of plaintiffs' earnest money and nominal damages of $1 each. The order was issued in response to defendant's motion to reconsider the trial court's memorandum opinion, issued after a bench trial, finding that defendant had breached the contracts by terminating plaintiffs' purchase agreements when they would not agree to an increase in the purchase price and awarding damages to each plaintiff equal to the difference between the increased price and the contract price for their condominium units. Plaintiffs also appeal from the trial court's finding that defendant did not violate the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2008)), by increasing the purchase price of the condominium units in order to coerce plaintiffs to either agree to the price increase or terminate their purchase agreements. On appeal, plaintiffs argue that: (1) the trial court erred in finding that they failed to present evidence to support an award of damages more than the return of their earnest money; and (2) the trial court's finding that defendant did not violate the Consumer Fraud Act was contrary to law and against the manifest weight of the evidence. For the reasons set forth below, we affirm the trial court.

¶ 2                         I. Background

¶ 3     Prior to 1992, the City of Elgin (City) acquired real estate near the Grand Victoria Casino (Casino) in an effort to redevelop its downtown area. The real estate consisted of two parcels, a townhouse parcel and a condominium parcel, and the City held a competition among

*Justice Murphy participated in the oral argument. Due to Justice Murphy's death, Justice Maureen Connors has reviewed the briefs and the oral argument recording.

developers for the best redevelopment plan. Defendant's predecessor, Par Development, Inc. (Par), submitted the winning proposal. In February 2002, the City and Par entered into a development agreement that provided that before the property could be conveyed to Par and construction could proceed, the City had to complete several conditions precedent, including environmental remediation, demolition of a theater, and acquisition of a parcel on the condominium site through eminent domain proceedings. In February 2004, River Park Place (RPP) was formed as an Illinois limited liability company to pursue development on the two parcels of land. By March 2004, the City had substantially completed its remedial work on the townhouse parcel and was preparing to convey it to RPP. In April 2004, RPP opened a sales office on the site and, although the City had not yet conveyed the property, RPP began to market both the townhouses and the condominiums. RPP based its pricing on the per-square-foot costs from a similar development in Chicago, which had served as a blueprint for River Park Place.

¶ 4    In October 2004, plaintiffs, who were frequent visitors to the Casino, each decided to purchase a unit in the planned condominium development as a second residence. On October 31, 2004, Martinez signed an agreement to purchase unit 608 for $243,338. That same day, Campos agreed to purchase unit 304 for $240,535. Both plaintiffs delivered their signed purchase agreements along with checks for $1,000 earnest money to RPP's sales office and shortly thereafter submitted checks for $6,000 to RPP to complete payment of their earnest money deposits of $7,000 each. There were no negotiations over the price of the condominium units, as they were presented to the public on a "take it or leave it" basis, and each plaintiff was to purchase his unit with cash rather than obtaining a mortgage. The parties' attorneys proposed several modifications to the purchase agreements; however, none of those proposed modifications were adopted.

¶ 5    The purchase agreements contained a default provision, paragraph 20, which states, in relevant part:

"If Seller refuses or is unable to deliver title for the Residence as herein provided prior to Closing, or if this Agreement is terminated prior to the time for Closing for any reason (including the failure to acquire ownership of the real property upon which the Residence is to be constructed from the City of Elgin) other than a default of Purchaser, the sole and exclusive remedy of Purchaser shall be the return of the Earnest Money deposit. Seller's sole liability at law or in equity shall be limited to the return of such funds to Purchaser."

¶ 6    The condominium site was conveyed to RPP by deed recorded on January 19, 2006. As of February 13, 2006, defendant had not begun work on the condominium building. On that date, defendant mailed a letter to all of the purchasers of the condominium units, including the plaintiffs, advising them that RPP had received title to the property from the City and had "finalized development plans for the project," but that due to delays in obtaining the property and modified building codes, the cost of construction had increased, and therefore, RPP was increasing the price of each condominium unit. The revised price for Martinez's unit was $336,070, an increase of $92,732 over the purchase agreement price, while the revised price for Campos' unit was $335,128, an increase of $94,593. The letters stated that if plaintiffs did not accept the revised price, their contracts would be terminated and their earnest money

would be returned, with interest. Plaintiffs did not consent to the price increase, and on March 20, 2006, defendant sent letters to the plaintiffs informing them that their purchase agreements were terminated and returning their earnest money, with interest. Plaintiffs rejected the return of their deposits.

¶ 7 On March 8, 2007, plaintiffs filed a three-count complaint against RPP in the circuit court of Cook County. Count I of the complaint alleged breach of contract and sought specific performance, count II sought a declaratory judgment that the contracts were valid and enforceable and that defendant breached the contracts by refusing to close and convey title, and count III alleged a violation of section 2 of the Illinois Consumer Fraud Act. 815 ILCS 505/2 (West 2008). Defendant filed a motion to dismiss pursuant to sections 2-619(a)(5) and (a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(5), (a)(9) (West 2008)). The trial court granted defendant's motion to dismiss as to count I seeking specific performance but denied the motion as to counts II and III and granted plaintiffs leave to file an amended complaint.

¶ 8 On December 9, 2008, plaintiffs filed their first amended complaint for breach of contract, declaratory judgment, and violation of the Consumer Fraud Act. Plaintiffs sought damages equal to the difference between their purchase agreement prices and the prices that defendant allegedly requested for each unit when it put them back on the market after terminating their agreements. Plaintiff Martinez had obtained a 2008 price list from RPP's sales office, which showed that the asking price for unit 608 was $336,070, the same price RPP had sought from Martinez in its February 2006 letter. The price list also indicated that unit 608 had been sold, although no evidence was presented at trial showing that it had indeed been sold for that price.[1] Since the contract price for his unit was $243,338, Martinez asked for damages in the amount of $91,790.[2] The 2008 list price for Campos' unit was $335,128 as compared to his purchase agreement price of $240,535, a difference of $94,593.

¶ 9 A bench trial was held on January 10, 11, and 12, 2011. Construction on the condominium parcel had not commenced at the conclusion of the trial, and there appears to be no planned commencement date. Following the trial, on March 8, 2011, the trial court entered a memorandum opinion finding that defendant's termination of the purchase agreements by its letters dated March 20, 2006 and the return of the earnest money deposits, with interest, constituted a breach of contract. With regard to damages, the court found that paragraph 20, the default provision of the purchase agreements, was not a valid and enforceable liquidated damages provision and instead agreed with plaintiffs that the proper measure of damages was the difference between the contract prices for the condominium units and the market prices on the date of the breach. To determine the market price on the date of the breach, the court relied on RPP's 2008 price list, and it granted the damages

---

[1]Christine Kempher, an RPP sales manager, testified that the price list was "peppered," meaning it showed that some units were sold even though they were not, in order to increase interest in the property.

[2]It appears that plaintiff Martinez erred in calculating his damages, as the difference between the market price of $336,070 and the contract price of $243,338 is $92,732.

requested by plaintiffs, $91,790 for Martinez and $94,593 for Campos. The court found in favor of defendant as to count II, seeking a declaratory judgment, and count III, alleging violation of Consumer Fraud Act.

¶ 10 Defendant filed a motion to reconsider, vacate, or modify the trial court's memorandum opinion and judgment. On May 9, 2011, the trial court entered a second memorandum opinion granting defendant's motion to reconsider and reducing plaintiffs' damages to $7,059.51, an amount equal to their earnest money deposit plus interest and nominal damages of $1. The trial court, citing *Bachewicz v. American National Bank & Trust Co.*, 126 Ill. App. 3d 298 (1984), stated that "[t]he general rule in Illinois is that plaintiff's damages [in a land sale contract] are the difference between the contract price and the market value on the date of the breach. *** Where the property is of no greater value on the day of the breach than the contract price, or, alternatively, where there is no evidence of the value of the land on the date of the breach except the agreed price, which has not been paid, plaintiff can recover nominal damages only." The court found that the effective date of the breach of contract was March 20, 2006, the date RPP sent letters to plaintiffs terminating their agreements and returning their earnest money, and that at that time, there was no evidence of the fair market value of the plaintiffs' condominium units. The court acknowledged that defendant requested increased prices from plaintiffs in its February 13, 2006 letters to plaintiffs, but found that those prices were not indicative of fair market value since there was no evidence that the units were ever sold at those prices. Further, although RPP's February 2008 sales list showed the increased prices and indicated that Martinez's unit had sold, testimony at trial indicated that "sold" only meant that a potential buyer had signed a purchase agreement or made a reservation, not that the transaction had been completed. Therefore, the court found that since there was no evidence of the value of the land on the date of the breach other than the agreed price, which had not been paid, plaintiffs were only entitled to return of their earnest money.[3] Plaintiffs now appeal.

¶ 11                                    II. Analysis

¶ 12 Plaintiffs raise two arguments on appeal. First, plaintiffs contend that the trial court erred in finding in its May 9, 2011 memorandum opinion that they were only entitled to return of their earnest money and nominal damages rather than damages equal to the difference between the contract prices for their condominium units and the market prices. Alternatively, plaintiffs argue, for the first time on appeal, that the proper measure of damages in this case is the difference between the cost of constructing the building defendant agreed to build and the fair market price of erecting such a building. Second, plaintiffs contend that the trial court erred in finding that defendant did not violate the Consumer Fraud Act by increasing the purchase price of the condominium units and requiring plaintiffs to either agree to the price increase or terminate their purchase agreements.

---

[3]The trial court did not change its March 8, 2011 finding in favor of defendant as to counts II (declaratory judgment) and III (Consumer Fraud Act).

-5-

¶ 13                                A. Standard of Review

¶ 14     The standard of review in a bench trial is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence only if the opposite conclusion is apparent or if the finding appears to be arbitrary, unreasonable, or not based on the evidence. *Id*. " '[A] reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact.' " *Emigrant Mortgage Co. v. Chicago Financial Services, Inc.*, 386 Ill. App. 3d 21, 26 (2007) (quoting *In re Application of the County Treasurer*, 131 Ill. 2d 541, 549 (1989)).


¶ 15                            B. Trial Court's Award of Damages

¶ 16     On appeal, plaintiffs first argue that the trial court erred in limiting their damages to a refund of their earnest money, because by doing so the court, in effect, enforced paragraph 20, the default provision of their purchase agreements. Plaintiffs assert that although paragraph 20 is not unenforceable or void *per se*, because it gives defendant discretion to terminate the contract and return plaintiffs' earnest money, Illinois courts have imputed a duty of good faith and fair dealing on a seller in the exercise of that discretion. Here, plaintiffs contend, defendant acted in bad faith by attempting to renegotiate the contract price for their condominium units in order to take advantage of a favorable real estate market and by unilaterally terminating their contracts when they would not agree to this modification. Plaintiffs argue that this failure to act in good faith precludes the enforcement of paragraph 20 to limit their remedies to a return of their earnest money.

¶ 17     For support, plaintiffs rely on *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461 (2004). In *Schwinder*, cited by the trial court in its March 8, 2011 opinion, plaintiffs signed a purchase contract for a condominium in Chicago. The contract contained a "Termination and Default" provision similar to the default provision in this case, which stated, in relevant part:

   " 'In the event Seller shall fail to [or] be unable to deliver title to the property as herein provided on account of title defects which Purchaser is unwilling to waive and Seller cannot cure or secure insurance over, or if Seller fails or refuses to carry out any material covenant or obligation hereunder or if Seller declines to close and notifies Purchaser, this contract shall be terminated and the earnest money and interest shall be returned to Purchaser. The return of such earnest money shall be Purchaser's sole and only remedy in such instance, the sufficiency of which is hereby acknowledged. Purchaser hereby waives all other remedies, other than a return of earnest money, which may be otherwise available to Purchaser.' " *Schwinder*, 348 Ill. App. 3d at 464.

¶ 18     Plaintiffs deposited the earnest money, obtained mortgage approval, and withdrew $10,000 from their 401(k) retirement plan for the down payment. *Id.* at 465. The day before the closing, plaintiffs were advised that closing would be delayed due to an injunction entered in the seller's divorce action. *Id.* Because the plaintiffs' lease on their prior residence expired and they needed a place to live, the parties executed a preclosing possession

-6-

agreement (PCPA), which granted possession of the condominium to plaintiffs until the seller was able to close. *Id*. The PCPA did not give the seller the right to terminate the contract but instead granted plaintiffs " 'the sole option [to] terminate this [PCPA] together with the Condominium Purchase Agreement \*\*\* by giving 30 days written notice to the seller' " if the closing did not occur " 'on or prior to November 30, 2000.' " *Id*.

¶ 19    Plaintiffs took possession of the condominium and, pursuant to the PCPA, paid $1,500 a month for the use and occupancy of the unit. *Id*. They installed a washer and dryer and made other similar improvements. *Id.* at 466. On November 8, 2000, an order was entered in the seller's divorce action allowing sale of the condominium; however, plaintiffs were unable thereafter to reach defendants or defendants' attorney to schedule a closing. *Id*. Plaintiffs then filed a complaint for specific performance against defendants, and defendants counterclaimed seeking possession and unpaid rent. *Id.* at 466-67. Following a bench trial, the court entered a judgment in favor of plaintiffs, finding that the purchase contract and the PCPA were binding on the parties and ordering specific performance, despite the default provision in the purchase contract limiting plaintiffs' remedies to return of their earnest money. *Id.* at 467.

¶ 20    On appeal, defendants argued that pursuant to the purchase contract they had the right to terminate the sale of the condominium unit without suffering any loss other than return of the plaintiffs' earnest money. *Id*. The appellate court disagreed and affirmed the trial court, finding that the PCPA was a valid modification to the purchase contract, which divested defendants of their right to enforce the " 'Termination and Default' " provision of the original contract and instead "implicitly open[ed] the door to remedies allowed by law and equity." *Id*. at 470-71. Further, the court found that even if defendants had an unfettered right to terminate the contract, they were estopped from doing so because they took steps, including executing the PCPA and removing the injunction in the divorce case, which plaintiffs detrimentally relied on by, for instance, moving into the condominium, making improvements to the unit, and withdrawing money from their 401(k) account and incurring a penalty. *Id*. at 473.

¶ 21    In response to defendants' argument that they had an unfettered right to terminate the purchase contract, the appellate court stated that courts have found an implied covenant of good faith and fair dealing in contracts, which "limit[s] the manner in which the party who is vested with discretion under the contract may exercise it by requiring that party to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Id*. at 473-74. Further, the court said, "a contract should be construed so as to make the obligations imposed by its terms mutually binding upon the parties, unless such a construction is wholly negated by the language used." *Id*. at 474. Therefore, the court concluded, a duty of good faith and fair dealing is imposed on a party who wants to unilaterally terminate a purchase contract and limit the remedies available to a plaintiff, and a failure to act in such a manner will render the contract enforceable. *Id*.

¶ 22    In this case, plaintiffs assert that defendant breached its duty of good faith and fair dealing by trying to renegotiate their contracts, as well as the contracts of all of the other people who had an agreement to purchase a condominium in the planned development, in

order to take advantage of a favorable real estate market and raise the purchase price. Therefore, plaintiffs argue, as in *Schwinder*, we should find that due to defendant's breach of its duty of good faith, paragraph 20 is not enforceable and that other remedies are available. Plaintiffs also argue that enforcing paragraph 20 to limit their damages to a return of their earnest money renders the contract illusory because defendant's breach has no legal consequences for them. See *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 213 Ill. 2d 58 (2004) (affirming appellate court's holding that an exculpatory clause in a safety deposit box lease agreement was unenforceable). Plaintiffs further assert that by enforcing the seller default clause in paragraph 20, the trial court reversed its March 8, 2011 finding of fact that defendant had breached its duty of good faith and fair dealing and, that pursuant to section 2-1203 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1203 (West 2008)), the trial court cannot change a finding of fact absent a presentation of newly discovered evidence, which did not occur here. We disagree.

¶ 23    First, addressing plaintiffs' contention regarding the trial court's finding of fact, we note that the March 8, 2011 opinion makes clear that the trial court found that paragraph 20 was not a valid and enforceable liquidated damages provision and that the proper measure of damages was the difference between the fair market value of the property and the contract price. In that opinion, the court determined the fair market value could be determined by looking at RPP's 2008 price list for the condominiums, which one of the plaintiffs obtained from defendant's office. Contrary to plaintiffs' assertion, the trial court's May 9, 2011 opinion was not based on a reversal of the court's finding with regard to defendant breaching its duty of good faith and fair dealing but instead on its conclusion that the evidence it previously relied on to determine the fair market value of the property at the time of the breach was not "legally competent." Further, the intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). Therefore, the trial court was permitted to grant the motion to reconsider based on its determination that it erred in its previous application of existing law.

¶ 24    Even if we agreed that the default provision in paragraph 20 was not enforceable, an issue we do not decide, we would still agree with the trial court that plaintiffs' damages are limited to a return of their earnest money plus interest, because in this case, any damages plaintiffs may have suffered were purely speculative. As the trial court noted, relying on *Bachewicz*, "[t]he well-established rule in Illinois is that the measure of damages for breach of a land sale contract is the increased value, *if any*, of the land at the time of the breach over the contract price. (*Dady v. Condit* (1900), 188 Ill. 234, 58 N.E. 900; *Spangler v. Holthusen* (1978), 61 Ill. App. 3d 74, 378 N.E.2d 304.) Within the context of this rule, the 'time of the breach' is the date upon which the conveyance has to be made. [Citation.] This rule applies with equal force to cases *** where there has been anticipatory breach in which prior to the time of performance one of the parties *** manifests its unequivocal intent not to perform." (Emphasis in original.) *Bachewicz*, 126 Ill. App. 3d at 308, *rev'd on other grounds*, 111 Ill. 2d 444 (1986). Further, the *Bachewicz* court stated, "[t]he purchase price for land set in the course of an arm's length transaction, if not proved to be forced or fraudulent, is evidence

of the highest rank to determine the true value of property. [Citation.]" *Id.* at 309. "Where the property is of no greater value on the day of the breach than the contract price, or, alternatively, where there is no evidence of the value of the land on the date of the breach except the agreed price, which has not been paid, plaintiff can recover nominal damages only. The burden is on plaintiff to prove fair market value on the date of the breach." *Id.* at 311.

¶ 25    Plaintiffs assert that because *Bachewicz* was overturned on other grounds by our supreme court, the judgment of the court below is entirely abrogated and should not have been relied upon by the trial court. For support, plaintiffs cite *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344 (2002), where the court stated that "When a decree is reversed and the cause is remanded without specific directions, the judgment of the court below is entirely abrogated, and the cause stands there as if no trial had occurred." (Internal quotation marks omitted.) *Id.* at 356. However, in *Bachewicz*, the supreme court reversed the appellate court but did not remand to the trial court. Further, the supreme court expressly stated that the issue of damages as decided by the appellate court was not part of the appeal to the supreme court. Therefore, the trial court did not err in relying on *Bachewicz* on the issue of damages in this case.

¶ 26    Further, the holding in *Bachewicz* relied upon our supreme court's holding in *Dady v. Condit*, 188 Ill. 234 (1900). In *Dady*, the parties had an agreement for defendant to convey 160 acres of farmland in Waukegan, Illinois, on August 1, 1891, to plaintiff for $150 per acre. Defendant refused to convey the property and plaintiff sued for breach of contract. The only issue before the appellate court was the amount of damages defendant owed to plaintiff. The court stated that "the measure of damages was the increased value, if any, of the premises at the time of the breach *** above the contract price. In other words, the general rule of 'actual compensation for actual injury' is applicable. Unless, therefore, the plaintiff below established that the property was of greater value on August 1, 1891, than $150 per acre, the verdict of the jury should have been for nominal damages only." *Id.* at 238. To establish the value of the property on the date of the breach, plaintiff introduced evidence at trial showing that if the property were subdivided it would be worth $300 per acre. However, that estimate was premised on the construction of a factory nearby, but plans to build the factory had been scrapped and therefore, the market value of the property was actually between $40 to $65 per acre, less than half the contract price. *Id.* Therefore, the court concluded that the jury should have been instructed that if the plaintiff failed to prove, by a preponderance of the evidence, that the fair cash market value of the property was more than $150 on August 1, 1891, plaintiff should only be awarded nominal damages. *Id.* The court further stated that the instruction was applicable in that case, where the evidence showed that the premises were worth much less on the date of the breach than the contract price. *Id.* at 242.

¶ 27    In its March 8, 2011 opinion, the trial court found that the plaintiffs' damages were equal to the difference between plaintiffs' contract prices and the prices as listed on a 2008 price list that Martinez obtained from RPP's sales office. In its May 9, 2011 opinion, however, the court modified that finding on the grounds that the 2008 price list was not "legally competent" evidence of the market price because it was dated two years after the March 2006

breach of contract and because there was no evidence that any of the condominium units were ever sold for the price listed. The court noted that Christine Kempher, RPP's sales manager, testified at trial that in 2006, the units were not selling at the new, higher price and did not begin selling until two years later. She also testified that although the price list indicated that several units were "Sold," that designation did not actually mean that there had been a completed sale on a unit but, rather, could indicate that a potential buyer had placed a hold on a unit or had signed a purchase agreement. The court noted that "[m]arket value is based on actual sales, where a closing has occurred, not on pending sales. At the time of trial, no construction of the condominium building had commenced and, thus, there were no completed sales as of 2006, 2008, or 2011."

¶ 28     Plaintiffs had the burden of proving fair market value on the date of the breach. *Dady*, 188 Ill. at 242. Absent such evidence, they were only entitled to nominal damages. *Id*. In this case, plaintiffs were not able to present such evidence because the 2008 price list was dated two years after the breach of contract, and there was no evidence that the 2006 asking price for the units was their fair market value. As plaintiffs' counsel stated during oral argument, he could not obtain or present an appraisal of the value of the property in 2006 because the condominium building was not built. Therefore, because plaintiffs' damages, if any, were purely speculative, the trial court's finding that they were only entitled to a return of their earnest money plus interest was not against the manifest weight of the evidence.

¶ 29     Plaintiffs alternatively argue that in cases such as this one, involving a breach of contract on property that is new construction, the proper measure of damages is the " 'difference between the cost of constructing, by contract, the building the contractor agreed to put up and the fair cost market price of erecting such a building.' " *Ross v. Danter Associates, Inc.*, 102 Ill. App. 2d 354, 370 (1968) (quoting *Bertram v. Bergquist*, 153 Ill. App. 43, 45 (1910)). Plaintiff did not assert this theory of damages in any pleading, memorandum, argument, or posttrial motion in the trial court. It is well settled that issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. *Cooney v. Magnabosco*, 407 Ill. App. 3d 264, 268 (2011). Therefore, plaintiff has forfeited this theory of damages.

¶ 30     Even if we were to consider the holding in *Ross*, however, we would find it to be factually inapposite. In *Ross*, the defendant entered into a contract with plaintiffs to construct two buildings on plaintiffs' property, a hotel and a restaurant, for $412,000. *Ross*, 102 Ill. App. 2d at 359. Shortly thereafter, defendant, upon realizing that the two buildings could not be built and supplied for the agreed-upon price, offered to build a combined restaurant and motel unit instead. *Id*. at 363. Plaintiffs declined and sued for breach of contract. After a bench trial, the court found in favor of plaintiffs and awarded them damages equal to the difference between the reasonable cost of completing the original two-building project and the contract price. Based on the evidence presented at trial, including testimony that the cost of constructing the two buildings would be $500,200, the court awarded damages in the amount of $84,839.42, which included costs plaintiffs had already paid. *Id*. at 365-66.

¶ 31     Plaintiffs contend that the trial court should have applied the same analysis here to find that their damages were equal to the amount it would cost to complete construction of their condominium units and the cost they agreed to pay in their purchase agreements. However, in *Ross*, the trial court was able to determine the cost of constructing a hotel and restaurant,

based on the evidence presented at trial, including defendant's own cost estimates. Conversely, in this case, the cost of constructing an individual unit that would have been part of a 60-unit condominium building is simply not calculable. As a result, plaintiffs simply failed to prove their measure of damages.

¶ 32　　For the foregoing reasons, we find that the trial court did not err in granting defendant's motion to reconsider and modifying its damages award to a return of plaintiffs' earnest money plus interest.

¶ 33　　　　　　　　　　　　　C. Consumer Fraud Act

¶ 34　　Next, plaintiffs assert that the trial court erred in finding that defendant's conduct did not violate section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 2008)). To establish a claim under the Consumer Fraud Act, a plaintiff must prove: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 551 (2009). Recovery may be had for unfair as well as deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). In measuring unfairness, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.* at 417-18.

¶ 35　　In their complaint, plaintiffs alleged that defendant violated section 2 of the Act "by deploying a bait and switch scheme to sell as many townhouses and condominium units as possible at fixed pre-construction prices in order to create a large market demand for its development, only to substantially increase the purchase price of the units in an attempt to coerce agreement from purchasers to voluntarily terminate their contracts or to agree to an increase in the purchase price of their condominium units."

¶ 36　　For purposes of the Consumer Fraud Act, a bait and switch occurs when a seller makes " ' "an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch customers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser." ' " *Garcia v. Overland Bond & Investment Co.*, 282 Ill. App. 3d 486, 493 (1996) (quoting *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 222-23 (1978), quoting 16 C.F.R. § 238 (1977)). Here, there is no evidence that when defendant advertised the condominiums in 2002 and plaintiffs signed their purchase agreements, defendant intended to sell something else to plaintiffs or even to raise the price two years later. Even if, as plaintiffs, contend, the defendant sought to terminate their contracts in order to take advantage of a "hot" real estate market, there was no evidence at trial that defendant entered into the contract intending to do so.

¶ 37　　Further, "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the elements of proximate causation." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 199 (2005). Here, there was no

evidence that plaintiffs were deceived by defendant. Plaintiffs did not consent to the price increase, and indeed, their contracts were terminated.

¶ 38　　　Not every individual breach of contract between two parties amounts to a cause of action cognizable under the Consumer Fraud Act. *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 765 (1999) (citing *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994)). Rather, the Consumer Fraud Act should not apply to simple breach of contract claims because if the Act did apply to such claims, common law breach of contract actions " 'would be supplemented in every case with an additional and redundant remedy.' " *Golembiewski*, 262 Ill. App. 3d at 1093 (quoting *Exchange National Bank v. Farm Bureau Life Insurance Co. of Michigan*, 108 Ill. App. 3d 212, 216 (1982)). The instant case is a breach of contract case, but plaintiffs have failed to present evidence to support a claim under the Consumer Fraud Act. Therefore, we affirm the trial court's judgment in favor of defendant on this count.

¶ 39　　　　　　　　　　　　　　　III. Conclusion

¶ 40　　　For the forgoing reasons, we affirm the trial court's May 9, 2011 memorandum opinion in favor of plaintiffs on their breach of contract claim and its award of damages equal to return of their earnest money plus interest and nominal damages in the amount of $1. We also affirm the trial court's finding that defendant did not violate the Consumer Fraud Act.

¶ 41　　　Affirmed.