# Illinois Official Reports

## Appellate Court

---

### *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053

---

| | |
|---|---|
| Appellate Court Caption | CARLA BURKHART, Plaintiff-Appellant, v. WOLF MOTORS OF NAPERVILLE, INC., d/b/a Toyota of Naperville, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-15-1053 |
| Filed | September 21, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-AR-707; the Hon. Brian R. McKillip, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Joshua M. Feagans and Kristin N. Stone, both of Griffin/Williams LLP, of Geneva, for appellant.<br><br>James J. Laraia, of Laraia & Laraia, of Wheaton, for appellee. |
| Panel | PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1      The defendant, Wolf Motors of Naperville, Inc., made a mistake in advertising one of its cars for sale. The plaintiff, Carla Burkhart, tried to purchase the car at the advertised price. After the defendant refused to honor its advertisement on the ground that the advertised price was an error, the plaintiff filed a complaint alleging that the defendant's actions constituted breach of contract and consumer fraud. The trial court granted the defendant's motion for summary judgment. The plaintiff appeals from that order. We affirm.

¶ 2                            BACKGROUND

¶ 3      On May 5, 2014, the plaintiff filed a two-count complaint against the defendant, alleging breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 2014)). The complaint alleged that on September 23, 2013, the plaintiff saw that the defendant was advertising online at www.toyotacertified.com a 2011 Toyota 4Runner for $19,991. The plaintiff contacted the defendant and indicated that she was interested in purchasing the vehicle. After the plaintiff test-drove the vehicle, she informed the defendant that she wanted to purchase the vehicle. The defendant's representative informed her that the price of the vehicle was $36,991. The plaintiff responded that she wanted the advertised price of $19,991. The defendant's representative confirmed that the vehicle had been advertised for $19,991 but explained that the advertisement was a mistake. The defendant's manager subsequently offered to sell the plaintiff the vehicle "at cost"—$35,000. The plaintiff refused to purchase the vehicle at that price.

¶ 4      The complaint alleged that the parties had a valid and enforceable contract for the vehicle at the advertised price of $19,991 and that the defendant breached the agreement when it refused to sell the vehicle to the plaintiff at that price. Alternatively, the complaint alleged that the defendant committed consumer fraud and injured the plaintiff when it advertised the vehicle at a price for which it did not intend to sell. The defendant filed an answer to the plaintiff's complaint, denying all material allegations.

¶ 5      On May 22, 2015, the defendant filed a motion for summary judgment. The defendant argued that the erroneous advertisement did not constitute an offer that could be accepted so as to form a contract. The defendant further argued that its actions did not constitute consumer fraud because (1) it did not commit a deceptive act or practice, (2) it did not intend for the plaintiff to rely on any deceptive act or practice, and (3) the plaintiff did not incur any actual damages.

¶ 6      In support of its motion for summary judgment, the defendant submitted the deposition of its Internet director, Thomas Gregg. Gregg testified that the $19,991 advertised price for the subject vehicle was a clerical error and that the correct price for the subject vehicle was $36,991. He explained that the clerical error occurred with the entry of the subject vehicle into the Dealer Daily system. He testified that the person who had entered the vehicle into the Dealer Daily system was not very familiar with the process and was in training. The person had mistakenly entered the price of a different vehicle. After Gregg discovered on September 23, 2013, that the price was incorrectly displayed, he immediately updated the price in the dealership DMS system, which then updated the listing on Dealer Daily. He did not realize that the update in the system took approximately four days to appear on the Internet.

¶ 7    The defendant also submitted the deposition of its used-car sales manager, Bryan Lieser. Lieser testified that, as of September 24, 2013, the appraised value of the vehicle in question was between $32,000 and $33,000.

¶ 8    On July 9, 2015, the plaintiff filed a cross-motion for summary judgment. The plaintiff argued that she was entitled to summary judgment because (1) the defendant admitted that it refused to sell the vehicle to the plaintiff as advertised and, alternatively, (2) the defendant admitted advertising a vehicle for sale without an intention of selling the vehicle as advertised.

¶ 9    On September 24, 2015, the trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion. The trial court found that, due to a clerical error, the car had been listed at an erroneous price. The trial court then explained that there was no contract formed between the parties because there was no mutual assent, as the "plaintiff believed she was purchasing a car for $19,991 [while] the defendant's salesman believed he was selling the same car for $36,991." Further, the trial court found that there was no consumer fraud because "the defendant did not intend the plaintiff to rely on a deceptive practice in which the defendant never intended to engage."

¶ 10    On October 20, 2015, the plaintiff filed a timely notice of appeal.

¶ 11                                                   ANALYSIS

¶ 12    On appeal, the plaintiff does not dispute the trial court's finding that the subject vehicle was advertised at the wrong price. Nonetheless, she insists that she did have a contract with the defendant or, alternatively, that the defendants' deceptive advertising constituted consumer fraud. She therefore argues that the trial court erred in granting the defendant's motion for summary judgment and denying her motion for summary judgment.

¶ 13    The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*People ex rel. Barsanti v. Scarpelli*, 371 Ill. App. 3d 226, 231 (2007)), and such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2-1005(c) (West 2014)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997). We review *de novo* the trial court's grant of a motion for summary judgment. *Coole v. Central Area Recycling*, 384 Ill. App. 3d 390, 395 (2008).

¶ 14    In order to establish a claim for breach of contract, a plaintiff must allege and prove the following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27 (2001). A valid and enforceable contract requires a manifestation of agreement or mutual assent by the parties to its terms, and the failure of the parties to agree upon or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking. *The Delcon Group, Inc. v. Northern Trust Corp.*, 187 Ill. App. 3d 635, 643 (1989). An advertisement is not an offer to a contract but rather constitutes an invitation to deal on the terms described in the advertisement. *Steinburg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977); see also *O'Keefe v. Lee Calon Imports, Inc.*, 128 Ill. App. 2d 410, 413 (1970).

¶ 15    In *O'Keefe*, the defendant advertised a 1964 Volvo station wagon for sale in the Chicago Sun-Times. The defendant instructed the newspaper to advertise the price of the car as $1795, but the newspaper erroneously advertised it as $1095. The plaintiff went to the defendant's place of business and sought to purchase the car for $1095. After the defendant's salesman refused to sell him the car at that price, the plaintiff filed a breach-of-contract claim against the defendant. The trial court subsequently granted the defendant summary judgment on the plaintiff's complaint. *O'Keefe*, 128 Ill. App. 2d at 411.

¶ 16    On appeal, the plaintiff argued that the advertisement constituted an offer, which he accepted and which therefore served as the basis of a binding contract. The reviewing court rejected this argument, explaining:

> "We find that in the absence of special circumstances, a newspaper advertisement which contains an erroneous purchase price through no fault of the defendant advertiser and which contains no other terms, is not an offer which can be accepted so as to form a contract. We hold that such an advertisement amounts only to an invitation to make an offer. It seems apparent to us in the instant case, that there was no meeting of the minds nor the required mutual assent by the two parties to a precise proposition. There was no reference to several material matters relating to the purchase of an automobile, such as equipment to be furnished or warranties to be offered by defendant. Indeed the terms were so incomplete and so indefinite that they could not be regarded as a valid offer." *Id.* at 413.

¶ 17    Here, as in *O'Keefe*, the erroneous advertisement could not in itself serve as the basis of a binding contract between the parties. The advertisement did not reflect a price for which the defendant ever intended to sell the vehicle. As such, the advertisement did not constitute an offer, and the plaintiff's "acceptance" of that advertisement did not establish a contract.

¶ 18    The plaintiff argues that *O'Keefe* is distinguishable because this case implicates the "special circumstances" that *O'Keefe* referred to. Specifically, the plaintiff points out that, unlike in *O'Keefe*, here (1) the plaintiff promised to pay the amount that was requested in the advertisement, (2) the advertisement referred to all of the equipment to be provided and the warranties offered, and (3) the defendant tried to use the advertisement to its advantage. We find the plaintiff's attempt to distinguish *O'Keefe* unpersuasive. Although the advertisement in the instant case included more information than the advertisement in *O'Keefe*, the advertisements were sufficiently similar because they both contained the wrong information about an essential term: the price. Here, although the defendant's manager did offer the car for a lower price after he learned that the plaintiff wanted it for the advertised price, the plaintiff never indicated a desire to purchase the car for anything other than $19,991. Accordingly, as there was never a meeting of the minds as to the price the plaintiff was willing to pay for the car and the price the defendant was willing to accept, there was no contract between the parties. See *Delcon Group., Inc.*, 187 Ill. App. 3d at 643.

¶ 19    Alternatively, relying on *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 221 (1978), the plaintiff argues that *O'Keefe* is no longer good law because it conflicts with the mandate of the Act that advertisements must be viewed as *bona fide* offers for sale. As this issue ties directly into the plaintiff's second contention, we will address it in that context.

¶ 20    The plaintiff's second contention on appeal is that the defendant committed consumer fraud when it advertised the vehicle without intending to sell it at the advertised price. The plaintiff insists that the defendant's advertisement constituted a *per se* violation of the Act

because the defendant refused to sell her the vehicle at the price that was listed in the advertisement. The plaintiff maintains that it is irrelevant whether the advertised price was correct.

¶ 21   "To establish a claim under the [Act], a plaintiff must prove: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception." *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 34. Recovery may be had for unfair as well as deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). In measuring unfairness, courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id.* at 417-18. Further, "in a cause of action for fraudulent misrepresentation brought under the [Act], a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the elements of proximate causation." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 199 (2005).

¶ 22   Although the record in this case reveals evidence as to some of the elements of a cause of action for consumer fraud, it is clear that plaintiff cannot prove all of them. Specifically, there is no evidence that the plaintiff suffered any damages. The plaintiff argues that her damages were at least $12,009: the difference between the price at which the car was advertised ($19,991) and the appraised value of the car (at least $32,000). However, only a person who suffers actual damages as a result of a violation of the Act may bring a private action. 815 ILCS 505/10a(a) (West 2014); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 626-27 (2008). The Act provides remedies for purely economic injuries. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 287 (2006). Actual damages must be calculable and "measured by the plaintiff's loss." (Internal quotation marks omitted.) *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009). The failure to allege specific, actual damages precludes a claim brought under the Act. *White*, 368 Ill. App. 3d at 287. The purpose of awarding damages to a consumer-fraud victim is not to punish the defendant or bestow a windfall upon the plaintiff but rather to make the plaintiff whole. *Mulligan*, 382 Ill. App. 3d at 629.

¶ 23   Here, the plaintiff is in the same position she was in before she saw the advertisement. The alleged damages she seeks would not compensate her for any actual loss but instead would constitute an improper windfall. See *id.* Accordingly, as the plaintiff suffered no damages, the trial court properly granted the defendant's motion for summary judgment. See *Martinez*, 2012 IL App (1st) 111478, ¶ 34. We note that this is not the basis on which the trial court granted the defendant's motion for summary judgment; however, it is well settled that we may affirm on any basis appearing in the record. *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010).

¶ 24   In so ruling, we reject the plaintiff's argument that the defendant's advertising the vehicle at a price that it did not intend to honor was a "*per se* violation of the Illinois Consumer Fraud Act" that entitles her to relief. Although even negligent or innocent misrepresentations are actionable under the Act, that still does not alleviate a plaintiff's obligation to prove her damages. See *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1039 (1992) (explaining that because innocent misrepresentations are actionable under the Act, damages will not be presumed).

¶ 25   Further, we find the plaintiff's reliance on *Garcia v. Overland Bond & Investment Co.*, 282 Ill. App. 3d 486, 493-94 (1996), *Affrunti v. Village Ford Sales, Inc.*, 232 Ill. App. 3d 704, 707

(1992), and *Bruno Appliance*, 62 Ill. App. 3d at 222, to be misplaced. All of those cases involve deceptive "bait and switch" situations. A "bait and switch" occurs when a seller makes an alluring but insincere offer to sell a product or service, which the advertiser in truth does not intend or want to sell. Its purpose is to switch customers from buying the advertised merchandise to buying something else, usually at a higher price or on a basis more advantageous to the advertiser. *Martinez*, 2012 IL App (1st) 111478, ¶ 35. Here, the defendant did not engage in any "bait and switch," as it did not try to induce the plaintiff to buy a vehicle other than the one that was advertised.

¶ 26    The plaintiff nonetheless insists that the defendant "employed tactics shadily similar to a 'bait and switch' in attempt to draw [the plaintiff] in." In support of this accusation, the plaintiff points to the defendant's offer to sell her the car "at cost" for a price that was actually higher than the defendant's cost. We reject this argument. The fact remains that there is no evidence that the plaintiff actually suffered any damages due to the defendant's deceptive advertisement.

¶ 27    Finally, we also find the plaintiff's reliance on *Montgomery Ward & Co. v. Federal Trade Comm'n*, 379 F.2d 666, 668-71 (7th Cir. 1967), to be misplaced. That case addressed whether Montgomery Ward had engaged in deceptive advertising when its advertised guarantees for some of its products conflicted with its written guarantees. However, as that case did not discuss damages that any customers might have suffered—something that our courts have consistently found is necessary in order for a plaintiff to maintain a consumer-fraud claim—*Montgomery Ward* does not require us to reach a different decision.

¶ 28                                   CONCLUSION
¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 30    Affirmed.